No. 47,981

William Arterburn, *Appellant,* v. St. Joseph Hospital and Rehabilitation Center, *Appellee* and *Third Party Appellant,* v. The Anderson Company, *Third Party Appellee.*

(551 P. 2d 886)

Opinion filed June 12, 1976.

*Jerry K. Levy,* of Michaud, Cranmer, Syrios, Post and Levy, of Wichita, argued the cause, and *J. Harold Williams,* of the same firm was with him on the brief for the appellant.

*Timothy E. McKee,* of Jochems, Sargent and Blaes, of Wichita, argued the cause, and *Emmet A. Blaes,* of the same firm was with him on the brief for the appellee and third party appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *William R. Sampson,* of the same firm was with him on the brief for the third party appellee.

The opinion of the court was delivered by

Harman, C.: This is a negligence action against a hospital for damages allegedly incurred when a hospital bed malfunctioned and ruptured a patient's spleen. Jury trial resulted in a verdict for the hospital. The patient's appeal involves the correctness of an instruction on circumstantial evidence and the refusal to instruct on *res ipsa loquitur.* A third party appeal, if reached, involves the propriety of summary judgment dismissing from the proceeding a

third party defendant which manufactured a component part of the bed.

The evidence revealed the following. Plaintiff-appellant William F. Arterburn has a long history of stomach ulcers. Beginning in March, 1959, and up to the incident in question he was hospitalized ten times for treatment of his ulcers, with surgery on one occasion. On February 4, 1970, he was admitted to the hospital operated by defendant-appellant St. Joseph Hospital and Rehabilitation Center. On February 12, 1970, Dr. William G. Cauble performed a vagotomy and an antrectomy on appellant in an effort to relieve his ulcerous condition. A vagotomy entails severing the vagus nerve which controls stomach acid production and an antrectomy involves removal of an ulcerated portion of a stomach. Both operations were in the upper abdominal area, over the location of the spleen. During the surgery Dr. Cauble encountered marked adhesions and scar tissue in appellant's abdominal cavity, stemming from his prior surgery. The adhesions were above and around the spleen. They were fibrous, bandlike structures which can adhere to parts of the internal anatomy connecting organs to other parts of the abdominal cavity. Adhesions vary in strength but are of such tensile nature they can transmit motion such as a pull.

During the four days following his surgery appellant progressed normally and became ambulatory. While hospitalized appellant was placed in a motorized, electrically operated hospital bed owned and maintained by appellee. Movement of the bed was activated by a push button so that it raised and lowered between a horizontal and sitting position for its occupant, bending at the hips. In the evening of February 16, 1970, appellant was raising the bed when the head of the bed apparently jerked and fell a short distance. Appellant could not determine just how far the bed fell back. At one point he testified it fell twelve to eighteen inches but at another time he stated it fell only one or two inches—he finally concluded he really didn't know how far it fell but in any event, as the bed fell, he tensed his muscles and attempted to brace his body so that he would not fall with the bed. Appellant reported the incident to a charge nurse who immediately came to his room. The nurse found the bed in an upright or sitting position with appellant sitting on the right hand side of the bed. She checked the operation of the bed, fully raising and lowering it, and found nothing wrong.

The following morning, February 17th, appellant complained of

pains in his stomach. Late that evening his condition deteriorated and Dr. Cauble performed exploratory surgery. He determined appellant's spleen had ruptured and removed it. During the surgery he found the spleen markedly attached to the diaphragm, pancreas, stomach and colon.

Experts were produced by both sides in an effort to establish causation of the splenic rupture. Dr. Cauble was of opinion the fall of the head of the bed, however little the distance, could have caused it and this was the most probable cause. He further testified he took precautions in his abdominal surgery to protect the spleen; he found no definite signs of injury to the spleen although he did see old blood clots in that area as well as fresh blood when he removed the spleen; that injury to the spleen is one of the most common hazards in performing a vagotomy and there is a high incidence of splenic injury in a vagotomy; it was possible the vagotomy had injured appellant's spleen—he could not be definite about his own role; it was also possible appellant had unintentionally injured his spleen.

Other expert medical testimony gave these possible causes for splenic rupture: (1) Spontaneous rupture with no apparent explanation; (2) disease; (3) external trauma; and (4) surgical trauma. One expert medical witness produced by appellee was of opinion the cause of appellant's rupture was the upper abdominal surgery performed by Dr. Cauble. He testified that in all probability a pull on one of the adhesions in the area loosened the spleen's capsule, causing the spleen to bleed internally and after enough pressure was built up inside it, to rupture; that he had never heard of the straining of abdominal muscles causing a spleen to rupture and such tensing of muscles or a fall of an inch or two would not be major trauma. This witness, who was a board certified general surgeon, further testified that damage to the spleen is common in two or three percent of upper abdominal surgery cases. Another medical witness testified that a one to two inch fall and tensing of muscles would not cause a splenic rupture. Still another, a pathologist, examined a slide of splenic tissue taken from appellant after the operation and found a blood clot believed to be between twelve and forty-eight hours old.

A mechanical engineer examined the bed occupied by appellant, except for the screw tube assembly or "Roton" which was not the same, and he testified that because of the bed's construction it was not possible for the bed to fall precipitously. He explained

the bed's operation and how the patient's upper and lower part of the body and the corresponding parts of the bed were counterbalanced. He further testified as to the short distance a person's spleen would move downward in a full fall of the bed.

The screw tube assembly or Roton is the mechanical heart of the bed and when activated causes the bed to rise and fall. Hospital personnel testified they would replace the Roton when a bed became noisy but they had never heard of a bed becoming jerky prior to this incident. After the incident, however, many of appellee's beds were tested and many were found to have some jerkiness during movement. A new Roton was installed in appellant's bed following the incident. Since these are sealed, prelubricated units which cannot be repaired, the particular Roton on appellant's bed was discarded by hospital personnel without inspection.

Appellant first contends the trial court erred in giving, over his objection, instruction No. 5 respecting proof of a fact by circumstantial evidence. This instruction stated:

"In determining whether or not the plaintiff has met his burden of proof in this case, you are instructed that a fact is not proven by circumstances which are merely consistent with its existence. Circumstances relied upon to prove a fact must be of such a nature and so related one to the other than the *only conclusion* to be drawn therefrom is the fact sought to be established. Accordingly, if there are several possible explanations of an injury all equally consistent with the fact of the injury, but not all of which can be charged against the defendant, the jury cannot guess or speculate as to which explanation applies. In such a situation the verdict must be for the defendant." (Emphasis supplied.)

Appellee first asserts we should not consider this point on appeal because appellant did not properly object to the instruction before it was given. The only objection was this:

"Mr. Levy: Plaintiff objects to giving Instruction No. 5 for a number of reasons. Number one, it talks about circumstantial evidence. If they are to be given this instruction, then I am entitled to the *res ipsa loquitur* instruction, and I think this instruction apples to cases when the plantiff has no direct or circumstantial evidence as to the cause of an injury. I think this instruction only applies when you have cases with multiple possible causes proven by a plaintiff, and I don't think that is the case here."

K. S. A. 60-251 (*b*) provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous.

Appellant's objection was in general terms. No reason was stated or ground furnished other than, if instruction No. 5 be given, it should be coupled with an instruction on *res ipsa loquitur.* This does not comply with the statute, the reason for which was stated in 3 Vernon's K. S. A. Code of Civ. Proc., Sec. 2513 as follows:

". . . a general objection is meaningless and cannot be used as a device to secure a subsequent reversal. The reason for condemning this practice is that the court may well have obviated the error if its attention was directed at the proper time to the particular matter about which the party may subsequently complain on appeal." (p. 250.)

The question remains whether the instruction was clearly erroneous and therefore assignable as error.

The definition of circumstantial evidence was stated in *Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 431 P. 2d 518:

"Circumstantial evidence in law is evidence that tends to prove a fact in issue by proving other events or circumstances which, according to common experience of mankind, are usually always attended by the fact in issue, and therefore affords a basis for a reasonable inference by the jury or court of the occurrence of the fact in issue. . . ." (Syl. para. 6.)

It is well settled that the proof of negligence and the fact of causation, like any other fact question, may be established by circumstantial evidence (*American Family Mutual Ins. Co. v. Grim,* 201 Kan. 340, 440 P. 2d 621).

The first sentence of the instruction is an accurate statement of the law in Kansas. A fact is not proven by circumstances which are merely consistent with its existence (*Hendren v. Snyder,* 143 Kan. 34, 41, 53 P. 2d 472). The remainder of the instruction, however, does not accurately reflect Kansas law. Circumstantial evidence, in a civil case, in order to support a verdict need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the jury. It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, although some other inference equally reasonable might be drawn therefrom (*American Family Mutual Ins. Co. v. Grim,* supra, Syl. para. 1).

The application of these rules can be seen in a number of cases. In *Railroad Co. v. Perry,* 65 Kan. 792, 70 Pac. 876, it was held:

"The fact that soon after the passing of an engine a fire starts near a railway-track in an enclosed field covered at the time with a growth of highly inflammable vegetation, and travels before a high wind in a direction away from the track, is sufficient to warrant a jury in finding that the fire was caused

by the operation of the railroad, without its appearing that the engine emitted sparks or live cinders or was put to special exertion, and without further proof excluding other possible origins." (Syl. para. 1.)

In *Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215, the plaintiff alighted from a train at night onto a depot platform which was not properly lighted or guarded by rails. She later fell from the platform, sustaining severe injuries. The railway company admitted it might have negligently maintained the platform but it asserted that other theories, such as the plaintiff's contributory negligence, would be as consistent with the facts and would explain her injuries in such a way as to relieve them of liability. The company contended that ". . . where a party relies upon circumstantial evidence to prove his case, those circumstances must not only be such as reasonably to lead to the conclusion arrived at by the jury, but that such conclusion must be the only reasonable conclusion consistent with the evidence; that, where the evidence is purely circumstantial and is equally consistent with a theory acquitting the defendant of liability as with one making it liable, plaintiff cannot recover." (p. 615.) This court disagreed, stating:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain the verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable hypothesis. The jury are not infrequently called on to decide between two or more theories, and in doing so may exercise their own best judgment in accordance with their oath-bound consciences. This must necessarily be so, for it is the province of the jury and not of the judge to determine whether the evidence better supports this or that theory. . . . [p. 616]

. . . . . . . . . . . . . . . .

"It is true, as announced in *Railway Co. v. Rhoades*, supra, that presumptions may not be based upon presumptions, and that it will not do to consider chance or circumstantial evidence having but a questionable or circumstantial basis of fact, but this is very far from announcing that an undisputed fact may not be used as a basis from which to draw a reasonable conclusion, even though some other and opposite conclusion equally reasonable might also be drawn; otherwise, we might have a condition where a question of fact could not be settled, because the circumstances upon which its settlement depended might point to two or more equally reasonable conclusions. As between two or more reasonable deductions from circumstantial evidence, the court is not at liberty to direct which one the jury shall adopt." (p. 617.)

A more recent case in this area is *American Family Mutual Ins. Co. v. Grim*, supra. There a group of boys entered a church during the late evening hours in search of soft drinks. While in the church they lit newspaper torches for light. They thought they

had extinguished the torches completely before they left the church. The evidence showed that other boys were in the vicinity of the church later on the same evening, before a fire broke out which heavily damaged the structure. Also, the evidence showed it was possible a short circuit in the wiring to an attic light could have caused the fire. In upholding the right of the insurer to recover against the first group of boys, this court said:

"Defendant challenges the court's finding that the fire was caused by the torches. The gist of his argument is that its finding is not supported by substantial, competent evidence, in that inferences different from that reached by the trial court might have been drawn from the evidence. Defendant points out that other boys were later seen in the vicinity of the church, and that the electric light in the east wing apparently had a short circuit in its wiring—all of which tended to show other possible causes of the fire which the trial court erroneously disregarded. The fallacy of defendant's argument is that in order for circumstantial evidence to be sufficient to sustain a finding in a civil case, such evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. [Citations] It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, *although some other inference equally reasonable might be drawn therefrom.*" (Emphasis supplied.) (p. 343.)

Most recently, in *Farmers Ins. Co. v. Smith,* 219 Kan. 680, 549 P. 2d 1026, we said this:

". . . It is, of course, settled law in this state that a cause of action may be proved by circumstantial evidence, and such evidence, in order to be sufficient to sustain a verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. . . ." (pp. 688-689.)

Therefore when a number of possible causes are shown for the damage to a plaintiff in a civil case, some of which are attributable to the defendant, while others are not, the plaintiff must show by a preponderance of the evidence to the satisfaction of the jury, that the cause attributed to the defendant is more probable than that attributed to other persons or agencies. There must be a rational basis for concluding it is more probable than not that the defendant's negligence caused the plaintiff's damage. It is not necessary for the plaintiff to eliminate all other possible causes of his injury in order to present a jury question (see *Sternbock v. Consolidated Gas Utilities Corp.,* 151 Kan. 81, 98 P. 2d 162).

These well settled principles compel the conclusion that the challenged instruction was clearly erroneous. Appellee points out language used by this court in *Bottjer v. Hammond,* 200 Kan. 327,

436 P. 2d 882, which is close to the instruction, except in one crucial respect, as follows:

". . . It is familiar law that negligence must be established by proof. Like any other fact it may be established by circumstantial evidence, but the circumstances relied upon must be of such a nature and so related one to the other that the only *reasonable* conclusion to be drawn therefrom is the theory sought to be established." (Emphasis supplied.) (p. 329.)

It can scarcely be argued there is no appreciable difference between the words "the only conclusion" and the words "the only reasonable conclusion". The inclusion of the word reasonable in the language above brings in the broad concept of probabilities and the fact the plaintiff must prove to the fact-finder's satisfaction that his theory of causation is more probable than any other shown by the evidence. Here, appellant had the burden of proving, by a preponderance of the evidence, that the rupture of his spleen was caused by the falling of the bed and the tensing of his abdominal muscles rather than surgical trauma or spontaneous rupture. Under the court's instruction he was required to prove conclusively that the rupture was caused by the falling of the bed before he could recover. This error went to the heart of appellant's case and substantially prejudiced his right to a fair trial.

Appellee further contends that even if the instruction was erroneous, the error was cured by considering the instructions as a whole. Our examination of the instructions does not lead us to this conclusion. The issue of causation was crucial in the case and in view of the explicit requirement of instruction No. 5 we cannot say its undue restrictiveness was cured by other instructions of a general nature.

Appellant asserts the trial court erroneously refused to instruct the jury on the doctrine of *res ipsa loquitur*. We think not. Essential to the application of the doctrine in any given case are three conditions. First, it must be shown that the thing or instrumentality causing the injury or damage must be within the exclusive control of the defendant. Second, the occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence. Third, the occurrence must not have been due to the contributory negligence of the plaintiff (*Bias v. Montgomery Elevator Co.*, 216 Kan. 341, 343, 532 P. 2d 1053).

To meet the first condition of *res ipsa loquitur* the plaintiff must show two things: (1) The specific thing or instrumentality which actually caused his injury or damage, and (2) that the thing or instrumentality which caused his injury or damage was within the

exclusive control of the defendant. Therefore, the doctrine is inapplicable where the thing or instrumentality which caused the injury or damage is unknown or cannot be shown. (*Chandler v. Anchor Serum Co.,* 198 Kan. 571, 426 P. 2d 82).

In *Travelers Ins. Co. v. Hulme,* 168 Kan. 483, 213 P. 2d 645, this court commented:

". . . The doctrine has no application to proximate cause—or perhaps we should say no application to the initial fact, or the fundamental or foundation fact which caused the injury or damage. The doctrine will permit an inference or presumption that the known act—or foundation fact—which produced the injury (proximate cause) was a negligent act, but it will not permit such an inference or presumption as to just what foundation fact did produce the injury—or, in other words, as to what act was the initial cause of the damage. Thus the doctrine cannot be applied where the thing which actually caused the injury or damage is unknown; but when it is known and disclosed and relied upon as the basis of the damage or injury, the application of the doctrine of *res ipsa loquitur* will infer negligence in the doing of the *thing* or in the commission of the *act.* . . ." (p. 486.)

The application of this distinction was illustrated in the recent case of *Querry v. Montgomery Ward & Co., Inc.,* 217 Kan. 104, 535 P. 2d 928. There the plaintiff's apartment was damaged by a fire. Evidence was produced at trial that the fire could have been caused by an allegedly defective electric blanket purchased from the defendant, by defective wiring in a wall socket, or from the remains of cigarette ashes. The trial court relied on a lack of evidence as to initial causation to sustain a motion for directed verdict against the plaintiff. In upholding the decision, this court summarized the line of cases which discuss the relationship between initial causation of damage or injury and the appliaction of *res ipsa loquitur:*

"In many of our cases we have pointed out that the doctrine of *res ipsa loquitur* is a rule of evidence that permits an inference that the known act or instrument which produced the injury was a negligent act or a defective instrument, but it does not permit a further inference as to what act or instrument produced the injury. . . . Ordinarily, the doctrine applies only in those cases where the instrumentality or thing causing the injury is under the exclusive control of defendant or defendants at the time of the injury and the surrounding circumstances are such as to leave no reasonable conclusion to be drawn therefrom other than that the occurrence in question happened because of the negligence of defendants. . . ." (pp. 108-109.)

A case similar to the one at bar is *Tatro v. Lueken,* 212 Kan. 606, 512 P. 2d 529. There the plaintiff underwent an abdominal hysterectomy. A few days after the surgery, she experienced a leakage of urine from the bladder into the vagina caused by a vesicovaginal

fistula. The expert testimony was that the fistula could have been caused by (1) stitching the bladder and vagina together during surgery, (2) clamping the bladder and vagina together during surgery, or (3) an abscess which is a normal risk of the surgery. Either of the first two causes was traceable to a deviation from the standard of care by the surgeon during the operation, but he denied he had either stitched or clamped the bladder and the vagina together. It was impossible to state definitely which of the three actually caused the fistula. Under those circumstances, this court held that the submission of an instruction on *res ipsa loquitur* to the jury would have been inappropriate. In *Tatro* we commented:

". . . As we have often said, the rule of *res ipsa loquitur* is one of evidence, rather than of substantive law, and generally becomes applicable in a negligence action where there is no direct proof of negligence, but where circumstances are established so as to leave no conclusion other than that defendant be at fault." (p. 611.)

The second component of the first element of *res ipsa loquitur*, exclusive control in the defendant, was discussed extensively in *Bias v. Montgomery Elevator Co.*, supra, where the plaintiff sustained injuries when an elevator fell at a hospital. There was no doubt about the thing or instrumentality which caused his injuries —the fall of the elevator. The defendant was responsible for the maintenance of the elevator under an exclusive service contract. It had been manufactured and installed by the Otis Elevator Company in 1958. Neither the plaintiff nor the defendant could find anything mechanically wrong with the elevator which caused it to fall and no repairs were necessary in order to put it back into service after the accident. In discussing the requirement of exclusive control, this court noted:

"According to Prosser, Torts, 4th Ed., [sec.] 39, p. 211, in order to establish exclusive control it is not necessary for the plaintiff to eliminate all other possible causes of the accident. All that is required is that the plaintiff produce sufficient evidence from which a reasonable man could say that on the whole it was more likely than not there was negligence on the part of the defendant. If the evidence establishes that it was at least equally probable the negligence was that of another, the court should refuse to submit to the jury the negligence of the defendant on the theory of *res ipsa loquitur*. This rule was recognized in *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 58 P. 2d 77, where it was said:

" '. . . But such a showing is not sufficient where the evidence offered suggests with equal force that the injuries might have resulted without fault of the defendant. . . .' (p. 76.)" (p. 344.)

Plaintiff's evidence in *Bias* failed to rule out other equally possible causes of the accident such as manufacturing defects, installation errors, design defects, or faulty construction of the elevator shaft, all of which would be the responsibility of persons other than the defendant. Under these circumstances the doctrine of *res ipsa loquitur* was held to be inapplicable. In reaching this conclusion we noted that numerous jurisdictions have refused to apply the doctrine in elevator maintenance cases and we further stated:

". . . Even where the doctrine has been applied, the courts usually indicate that if there was proof of a real possibility other forces could have caused the elevator malfunction, then the doctrine would be inappropriate. Accordingly, the majority of jurisdictions agree *res ipsa loquitur* is inapplicable where the injured party fails to exclude other possible causes of the injury. [Citation]

"In *Kekelis v. Machine Works*, 273 N. C. 439, 160 S. E. 2d 320, the court stated:

" 'The rule of *res ipsa loquitur* never applies when the facts of the occurrence, although indicating negligence on the part of some person, do not point to the defendant as the *only* probable tortfeasor. In such a case, unless *additional evidence*, which eliminates negligence on the part of all others who have had control of the instrument causing the plaintiff's injury, is introduced, the court must nonsuit the case. . . .' (p. 444)" (pp. 345-346.)

In the case at bar, appellant effectively demonstrated that the hospital bed was within appellee's exclusive control. He has failed, however, to show that the malfunction of the hospital bed was the thing or instrumentality—the initial or foundation fact—which caused his spleen to rupture. Further, appellant has been unable to show that other possible causes of the rupture, all of which were traceable to persons other than appellee, did not cause his injuries. Under these circumstances, the trial court did not err in ruling that the doctrine of *res ipsa loquitur* was not applicable. In reaching this conclusion we do not overlook the several cases cited by appellant which he contends support applicability of the doctrine in this case. An analysis of each reveals that in none of them was there any question concerning the thing or instrumentality which actually injured the plaintiffs, and only upon this showing did the doctrine of *res ipsa loquitur* become applicable.

Since new trial must be had because of the erroneous instruction on circumstantial evidence the third party appeal must be dealt with. After this suit was filed by appellant against appellee St. Joseph Hospital and Rehabilitation Center, it in turn filed a third party petition naming The Anderson Company and the Simmons Company as third party defendants and alleging on their part negli-

gent manufacture and design of the bed. The petition sought reimbursement for any amount it might be required to pay appellant on his claim. It appears Anderson designed and made the screw tube assembly or Roton on the hospital bed while Simmons assembled the bed and sold it to appellee. Anderson first filed an answer alleging numerous defenses and, prior to trial but after depositions of hospital personnel had been taken, it filed a motion for summary judgment on the third party claim. The motion as well contained several grounds. This motion was sustained by the administrative judge without statement of any reason for the decision. Anderson says the only reason was that shortly after the incident in question the Roton on the bed appellant was occupying was discarded and thrown away by hospital personnel without any inspection, thus rendering it impossible for the requisite showing to be made that the Roton was defective at the time it left Anderson's control and remained so at the time of the incident. Anderson defends the summary judgment only upon this ground.

Appellee responds that rendition of summary judgment was premature in that the court had before it no evidence on the issue of the unit's manufacture or design. We agree, particularly since appellee was asserting negligent design. If in fact these units were improperly designed and manufactured as alleged then the absence of the particular unit would not necessarily render proof of the same impossible. Appellee may have difficulty in making such proof but it is nonetheless entitled to try in event it is held liable for appellant's damage.

Upon appeal and upon the third party appeal the judgments are reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

APPROVED BY THE COURT.

KAUL, J., dissents.