(601 P 2d 691)

No. 50,559

Larry Dickey and Phyllis Dickey, *Appellants,* v. Corr-A-Glass and Topping Building Service, *Appellees.*

Opinion filed October 26, 1979.

*B. E. Whalen,* of Whalen, McGinley & Fairbanks, P.A., of Goodland, for the appellants.

*Thomas J. Berscheidt,* of Ward & Berscheidt, of Great Bend, for the appellee Corr-A-Glass.

*Thomas C. Boone,* of Hays, for the appellee Topping Building Service.

Before Swinehart, P.J., Abbott and Parks, JJ.

Parks, J.: This is an action by Larry and Phyllis Dickey to recover from Corr-A-Glass and Topping Building Service damages which resulted from the flooding of their home. Plaintiffs contend that the trial court erred by excluding the testimony of their expert witness and by directing a verdict in favor of the defendants at the close of plaintiffs' evidence. We conclude that the court did err and we reverse.

Plaintiffs contracted with Topping Building Service to construct a rural home for them. Topping installed a 1000-gallon septic tank made of fiberglass and built by Corr-A-Glass, a Nebraska corporation. The tank was buried so that the top was nine feet below ground and was hooked up before completion of the house.

On May 28, 1975, the area received a heavy rainfall of four to six inches. That evening Larry Dickey discovered that water was running into the lower living level of the house, apparently from one of the drains leading to the septic tank. A visual inspection of the area around the tank revealed that the dirt had settled four feet and that water from the surrounding area was running into the

hole thus created. Water and sewage backed up approximately 30 inches in the basement before it could be halted. As a means of stopping the flow of water, Dickey's neighbor dumped three loads of dirt—each load weighing about a ton—into the hole. When the tank was subsequently removed, it was found that the inlet pipe had broken away. Topping removed the damaged tank and installed a new one of the same type.

One of plaintiffs' witnesses, Wayne Williams, a civil engineering professor, was employed to examine and test several pieces of the damaged fiberglass septic tank. Objections were raised to his testimony concerning these tests. Following a hearing outside the jury's presence, the trial court ruled that Williams could not testify because he was not licensed as a professional engineer in the State of Kansas.

The testimony of an expert is controlled by K.S.A. 60-456(b), which provides:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

Generally, the qualifications necessary for a witness to testify as an expert are within the discretion of the trial court. *Borth v. Borth,* 221 Kan. 494, 561 P.2d 408 (1977). Here plaintiffs' witness Williams testified that he is a professional civil engineer and professor of civil engineering at Kansas State University, he holds a master's degree in civil engineering, owned and operated the Des Moines Testing Laboratory from 1955 to 1965 and is a member of the American Society for Testing Materials and the American Society of Independent Laboratories. Williams has done soil exploration, testing and investigation; he has tested concrete, steel, brick, asphalt, and generally a full range of construction materials. He provided consulting services in over 20 states in 1977, and worked with Tinker Air Force Base in developing a runway using resin and fiberglass. He teaches soil mechanics and foundation engineering courses and is licensed in Iowa and Texas, with applications pending in Kansas and Missouri.

The trial court did not disqualify the witness on the basis of these qualifications or the provisions of K.S.A. 60-456(b), but

instead held that as a matter of law, Williams could not testify concerning his opinion as to the ultimate facts involved in this law suit because he was not licensed by the State Board of Technical Professions (K.S.A. 1978 Supp. 74-7001 *et seq.*). In response to the inquiry of plaintiffs' counsel as to whether Williams would be permitted to testify as to any of the tests he had conducted, it was said:

"The Court: Nor any of the tests that he has conducted. I just don't see how we can get away from the fact that *a license is required to perform these tests and to testify as a professional engineer.*" (Emphasis added.)

No authority has been found to uphold the trial court's view. States which have considered this point are well represented by the case of *Carvell v. Winn,* 154 So. 2d 788, 790 (La. App. 1963). There it was held that the fact that a witness is not licensed to practice under the laws of the jurisdiction is immaterial insofar as concerns his competency to testify as an expert; such competency is based upon his specialized training, knowledge and experience.

The most relevant Kansas case on point was presented in *Hayes v. United States,* 367 F.2d 216 (10th Cir. 1966). There a medical practitioner not licensed as a physician in Kansas testified about the results of an autopsy he had performed on a murder victim. Upon appeal from his conviction, the defendant asserted that since Dr. Quinn was not licensed to practice medicine in the State of Kansas, his testimony should not have been admitted. In disposing of the defendant's objections, the court stated:

"It appears to the Court that Dr. Quinn was well qualified as an expert, and whether or not he was licensed in the State of Kansas did not control in this case. We need not enter into a discussion of that phase of the objection.

"It is well settled that medical experts may be permitted to testify in matters concerning which they are qualified even though they may not be licensed to practice medicine in the jurisdiction involved. 32 C.J.S. Evidence § 546 (92) pages 336-346.

"We do not pass on the question of whether or not Dr. Quinn falls within the provision of the statute. In any event we feel that he is an expert whose testimony was admissible at the trial. [Citations omitted.]

"Dr. Quinn was well qualified by both training and experience to give expert testimony in the matter of autopsies, and the Court did not err in admitting his testimony." (p. 222.)

This rule was reaffirmed by our Supreme Court in *State v. Jones,* 209 Kan. 526, 533, 498 P.2d 65 (1972).

The propriety of one acting in a certain capacity contrary to a licensing statute is not relevant to the ability of an expert to "impart knowledge within the scope of his special skill and experience that is otherwise unavailable to the jury." *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, 21, 578 P.2d 1095 (1978). We hold that a witness may not be disqualified from testifying as an expert solely because he is not licensed in this state.

At oral argument, counsel for defendant Topping suggested that the court's decision may still have been correct because the expertise of the witness Williams was not sufficient to qualify him as an expert on the disputed issues. We cannot agree. The specific area of expertise about which plaintiffs' witness was to be questioned was never established. Lacking this, it would be impossible to discern what qualifications would have been necessary. The exclusion of the testimony of plaintiffs' expert witness went to the heart of their case and substantially prejudiced their right to a fair trial.

Plaintiffs next contend that the trial court erroneously refused to apply the doctrine of *res ipsa loquitur.*

"Essential to the application of the doctrine [of *res ipsa loquitur*] in any given case are three conditions. First, it must be shown that the thing or instrumentality causing the injury or damage was within the exclusive control of the defendant. Second, the occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence. Third, the occurrence must not have been due to the contributory negligence of the plaintiff." *Bias v. Montgomery Elevator Co.,* 216 Kan. 341, 343, 532 P.2d 1053 (1975).

See also *Arterburn v. St. Joseph Hospital & Rehabilitation Center,* 220 Kan. 57, 64, 551 P.2d 886 (1976); *Trent v. Sellers,* 1 Kan. App. 2d 267, 271, 563 P.2d 1106, *rev. denied* 225 Kan. 846 (1977).

The exclusive control requirement of *res ipsa loquitur* is not established unless it is more likely than not that the damage resulted from the negligence of the defendants. *Bias v. Montgomery Elevator Co.,* 216 Kan. at 344. Measured by the foregoing rule, we do not find in the record any evidence from which it reasonably may be inferred that the damage more probably occurred *only* because of negligence on the part of the defendants. Accordingly, we hold that under these circumstances, the trial court did not err in ruling that the doctrine of *res ipsa loquitur* was not applicable.

*Res ipsa loquitur* is an evidentiary rather than a substantive

principle. *Tatro v. Lueken,* 212 Kan. 606, 512 P.2d 529 (1973). Therefore, our holding that the application of this doctrine was correctly denied pertains only to the case already established by plaintiffs. Any new evidence presented by plaintiffs' expert must prompt a reconsideration of the question.

Since a new trial must be held because of the erroneous exclusion of the testimony of plaintiffs' witness, we need not address the issue relating to the trial court's denial of plaintiffs' motion to allow the endorsement of an additional expert witness.

Judgment is reversed with directions to grant a new trial.