## RONALD EDWARD MARTELLE v.
## ALLAN D. THOMPSON.

167 N. W. (2d) 376.

April 25, 1969—No. 41414.

*J. Derck Amerman* and *Wegner, Wegner & Amerman,* for appellant.
*Clifford G. Nelson,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from a judgment dismissing plaintiff's action after he rested his case.

Defendant was the owner of property located at 2209 Long Lake Road, New Brighton, Ramsey County, Minnesota, and resided thereon. His property was adjacent to property owned by one Charles W. North at 2175 Long Lake Road. Plaintiff lived at 2179 Long Lake Road. According-ing to a sketched plat introduced in evidence, these three houses are side by side, more or less in a line, some distance south of Long Lake Road,

plaintiff's home being on the lot to the east, the North home on the center lot, and defendant's home on the lot to the west.

Plaintiff alleged that defendant on Sunday, May 2, 1965, burned and otherwise disposed of various quantities of brush, limbs of trees, etc. on a portion of the North lot adjacent to defendant's own lot. He further alleged that defendant was negligent in failing to warn other residents in the neighborhood that the fire was still alive before he retired that evening; that he was negligent in failing to provide adequate facilities to put out the fire in the event that it rekindled itself or got out of control; and that, as a proximate result, plaintiff was severely burned when rising to an emergency that presented itself that night when he attempted to put out a spreading grass fire. Plaintiff claimed that he suffered third-degree burns in the area of his left foot and left forearm, all to his general and special damage.

Plaintiff testified that at about noon of the day involved he observed defendant burning brush and limbs of trees on the southwest portion of the lot owned by North. He stated that the lots described ran 400 feet in depth northward from the shore of Long Lake; that the grass fire was about 100 feet long from north to south and 50 feet in width, beginning about 40 feet north from the lakeshore on North's lot and extending northeastward from the east line of defendant's lot. Plaintiff stated that this fire originated on a patch of ground covered with grass and brush. (Another witness, William C. LaDoucer, limited the burning area to about half the size in comparison to plaintiff's estimate.) Plaintiff estimated the distance of the North house at 100 feet from the fire and his own at 200 to 300 feet northeasterly from the fire.

Plaintiff testified that about 10 o'clock that morning he commenced working on his boat on the north side of his house; that he worked on it all day long up to about 10:30 or 11 p. m., except for time taken out to have lunch or to get a cup of coffee. He cleaned the entire boat—a cabin cruiser 21 feet long—on the inside with solvents and gasoline. The standard solvent used was a volatile grease cutter which would indicate that both the solvent and gasoline used were combustible. He applied both the solvent and the gasoline with a paint brush. The work was confined to the inside of the boat over those working hours. He said that he imagined that the sol-

vent and gasoline got onto his clothing during those inside operations. He wore the same clothing when going to put out the fire.

Plaintiff estimated that when he first saw the fire at noon, it was 4 or 5 feet in diameter. He testified that he last saw defendant near the fire at 4 o'clock that afternoon. He also stated that he did not know if anyone else put anything on the fire at that time; neither did he notice whether the fire had burned down at 4 p. m. nor if it was there later at 8 or 9 o'clock that evening. Plaintiff said that he believed he first saw grass burning at about 11:30 that evening.

It appears that plaintiff and LaDoucer were sitting in plaintiff's kitchen when they first caught sight of the grass fire. They both got up, plaintiff going into his basement for a scoop shovel and leaving by his basement door to assist in putting out the fire. He reached the north end of the fire closest to his home in some 30 seconds and began to pound the fire with the shovel. He admitted that there was no strong wind blowing, no wind making the flames bend one way or the other. He stated that he had been beating the fire for 5 minutes when defendant and LaDoucer arrived. He further stated that he got burned after he had been there a couple minutes. He said that he took off his clothes at the fire, put his shoes back on, and went to his basement in his shorts, putting on some old clothes, suntans, he had in the basement. The two men were at the scene when he returned. Plaintiff did not know what part of the fire defendant and LaDoucer put out, but he joined in and the fire was put out in about 10 minutes.

Plaintiff told the men assisting in putting out the fire that he had been burned. Thereafter, he went to defendant's home where Mrs. Thompson put some salve on his arm. He did not at that time complain of his ankle or leg being burned. Defendant then took plaintiff to North Memorial Hospital. The hospital record contains this statement:

"Physician's Findings: Odor of Alcohol: Present  *  *  *

"Physical Findings: About 1 hour ago, after filling gas into motor, was fighting grass fire, arm began to burn.

"II° burns from elbow to fingers along medial surface, including palm."

The exhibit lists medical treatment and drugs administered and states: "Patient left in charge of neighbor." The exhibit makes no reference to leg or ankle burns.

There is evidence that beer and whisky were consumed during the afternoon and evening by plaintiff and LaDoucer.

After discovery of the fire, no one called the fire department. Of course, plaintiff said the three of them were able to extinguish the fire in about 10 minutes. Plaintiff testified that on two prior occasions he had called the fire department—once to put out a grass fire and another time in regard to a cabin home fire. As to the grass fire, the fire department had reported within a half hour.

■ One of the questions presented is whether plaintiff established a prima facie case that defendant was chargeable with starting the second fire some 8 hours after he was last seen at the scene. The trial court thought it highly speculative and said:

"I wouldn't think so because of that long eight hour lapse; the matter of fact he had a fire going eight hours before and taking into consideration the many grass fires that occur without any explanation. Somebody could have thrown a cigarette in there; some kid could have come out and touched the weeds off as they frequently do."

Plaintiff cites several cases which he contends should govern the facts in his case: Reynolds v. Great Northern Ry. Co. 159 Minn. 370, 199 N. W. 108; McKay v. Atlantic Coast Line R. Co. 160 N. C. 260, 75 S. E. 1081, Ann. Cas. 1914C, 412; Glanz v. Chicago, M. & St. P. Ry. Co. 119 Iowa 611, 93 N. W. 575; Krippner v. Biebl, 28 Minn. 139, 9 N. W. 671; Erickson v. Strickler, 252 Minn. 351, 90 N. W. (2d) 232.

In these cases the fires came about under entirely different circumstances, occurred in isolated areas where the possibility of alternate sources of fire was infinitesimal, and generally presented facts that clearly pointed to the origin of the fires involved. We have screened those decisions, and we fail to see where they fit into the fact situation of the present case.

In the face of the state of the record herein, plaintiff contends that his conduct is to be justified on the basis that because of being placed in a position of peril he was faced with an emergency, citing cases and authorities involving prairie fires, forest fires, and burned buildings. We have examined these authorities and find no place for the application of the immi-

nent peril or emergency doctrine to the facts submitted on this appeal. The magnitude of the conflagrations involved in the cases cited by plaintiff bears no comparison to the small grass fire which plaintiff voluntarily attempted to beat down and which he said was disposed of in a period of about 10 minutes. Neither defendant nor LaDoucer, who plaintiff said helped put out the fire, suffered any burns. There was no destruction of property involved. This grass fire did not occur in a rural or isolated area but in a populated suburban area of the Twin Cities.

Negligence may be proved by circumstantial evidence but the evidence sustaining the hypothesis contended for must preponderate as against other hypotheses. Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611; 7 Dunnell, Dig. (3 ed.) § 3234. Generally, circumstantial evidence must justify a reasonable inference as to the issuable facts. It is not enough that there may be some basis for bare conjecture, speculation, or suspicion. The conclusion arrived at should outweigh and preponderate over any other theories.

■ Considering the facts herein, it is quite clear that the parties were dealing with an ordinary grass fire, moving only at a slow rate with little or no breeze to impel its movement. Plaintiff's clothing caught on fire when he commenced using a scoop shovel to beat it out, according to his own admissions, by his clothing being to some extent saturated with combustible solvents. Perhaps, as plaintiff stated at the hospital, it was also due to the fact that he had just filled the boat's motor with gasoline.

After plaintiff rested, defendant moved for a dismissal, and the trial court listened to the views of opposing counsel. During that argument, the trial judge made the following comments:

"What about his [plaintiff's] going out with a shirt and pants not saturated, but to some extent indoctrinated with this fluid and gasoline? What about that as contributory negligence as a matter of law? It seems to me that a man so dressed with that on his person and just plunges headlong into danger—the other two persons weren't burned, and to me the sole cause of his injuries was the fact that he had gasoline on his clothes and walks into a fire with gasoline. When you do that you're going to get burned. * * * [T]hen there's the further problem, this occurred around midnight and nobody had seen this fire going later than about four in the

afternoon, and in the eight hours intervening any number of things could have happened, * * *. I don't think there is any proof here that the bonfire that the defendant set started this grass fire; it could have been but it's speculative.

\* \* \* \* \* \*

"* * * I don't see how he [plaintiff] can hurdle the contributory negligence as a matter of law under his own testimony. He didn't testify here that he was just filling a motor with gasoline. But because of those two things my belief is that I'm bound to grant the motion to dismiss the case.

\* \* \* \* \* \*

"What did he say at the hospital? He said, 'my arm caught fire,' as though it was the flesh on his arm that caught fire, and he immediately attributed his injury to the fact that he filled a motor with gasoline. According to the hospital report that was his reason for his being burned."

Plaintiff's own admissions and his failure to prove specific causes of his getting burned, other than admitting the use of flammable solvents and gasoline, left the trial court no alternative but to rule that the condition of plaintiff's clothing was the proximate cause of the burns suffered and constituted contributory negligence as a matter of law.

No further discussion of other issues raised on this appeal is deemed necessary.

Affirmed.