REPUBLIC NATIONAL LIFE INSURANCE COMPANY v. MARQUETTE BANK AND TRUST COMPANY OF ROCHESTER.

251 N. W. 2d 120.

February 18, 1977—No. 46423.

*Levitt, Palmer, Bowen, Bearmon & Rotman, Robert M. Bowen, J. Patrick McDavitt, Michaels, Bishop, Seeger & Rosenblad,* and *David T. Bishop,* for appellant.

*Dorsey, Windhorst, Hannaford, Whitney & Halladay* and *Craig A. Beck,* for respondent.

PETERSON, JUSTICE.

In a suit for declaratory judgment, the district court held that plaintiff's mortgage on certain real property was prior to defendant's lease and that in the event of foreclosure on the mortgage, the property would not be subject to the lease. The court based its holding on the grounds that plaintiff was a subsequent purchaser in good faith under the the recording statute, Minn. St. 507.34,[1] and that the lease contained an implied subordination agreement in favor of the mortgage. On appeal, defendant argues that the evidence does not sustain either finding.[2] We reverse.

Plaintiff, Republic National Life Insurance Company (Republic), a Texas corporation, holds a mortgage on certain real estate, including an office building, in Rochester, Minnesota. Defendant, Marquette Bank and Trust Company of Rochester (Marquette) holds a 50-year lease on part of the building. Lorraine Realty Corporation (Lorraine) holds part of this real estate in fee simple and part as lessee under a long term ground lease. This action arises out of the complex arrangements, undertaken by these parties and others, to finance construction of the office building.

In 1961, Marquette (then called the Olmsted County Bank and Trust Company) began negotiations with various parties for a new bank building. In 1963, negotiations with Lorraine culminated in Marquette's drafting a letter of intent to lease, which Lorraine used, with Marquette's consent, to interest lending institutions in financing construction of the office building. The

---

[1] Minn. St. 507.34 provides: "Every conveyance of real estate shall be recorded in the office of the register of deeds of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded * * *."

[2] Due to our disposition of the merits, we do not reach defendant's other arguments.

letter stipulated that the lease contain certain provisions, including the following: (1) Marquette would lease for 50 years a specified amount of space at a specified rent; (2) Marquette would have an option to purchase; and (3) the building would be called "The Olmsted County Bank Building."

Meanwhile, the First National Bank of St. Paul (First Bank) agreed to make an interim construction loan to Lorraine if Lorraine secured from long term lenders commitments to purchase the loan from First Bank upon completion of construction. Republic expressed its interest in providing long term financing and submitted to First Bank a letter of commitment, dated April 24, 1964, in which it agreed to purchase the loan, provided certain conditions, including the following, were met: (1) Lorraine would lease to Marquette for a term of 50 years a specified amount of space in the building at a specified rent; (2) the loan would be secured by an assignment of rents due under the lease and by a first mortgage lien on the land and office building to be built; and (3) the loan papers would include a title guaranty policy showing "no exceptions other than those customarily set out which do not affect the priority of the mortgage lien."

To ensure that Republic would buy the loan, First Bank made Republic's requirements its own. It sent a letter to Lorraine in which it listed Republic's requirements as the conditions to its own loan to Lorraine. Accordingly, Lorraine and Marquette entered into a lease agreement on June 22, 1964. The lease does not contain a subordination clause.

Copies of various documents, including the lease between Lorraine and Marquette, were then sent to and approved by Republic. Subsequently, First Bank made a loan of $1,900,000 to Lorraine. It took as security a mortgage deed executed on August 21, 1964, and an assignment of rents. The mortgage deed contained a covenant that "the [said premises] are free from all liens and incumbrances." First Bank arranged for the mortgage deed to be recorded on August 31, 1964, and for the lease and assignment of rents to be recorded on September 1, 1964.

No testimony was offered at trial that Marquette had seen the mortgage deed, the letter from Republic to First Bank listing Republic's requirements, or the letter from First Bank to Lorraine reiterating those requirements. None of the witnesses could testify as to having discussed with Marquette, either orally or in writing, the subject of priority of the mortgage.

On January 3, 1969, First Bank assigned the mortgage to Republic as earlier agreed. Lorraine subsequently defaulted on its obligation under the mortgage. Desiring to institute foreclosure proceedings, Republic brought suit for a declaratory judgment that its mortgage was superior to Marquette's lease.

A situation thus arose in which Republic knew that Marquette's lease predated its mortgage, but at the same time intended its mortgage to be superior and believed that it was, in fact, superior. On these facts, Republic argues that it be found to be either a subsequent purchaser in good faith or the beneficiary of an implied agreement to subordinate the lease.

■ *Subsequent Purchaser in Good Faith*

In Bergstrom v. Johnson, 111 Minn. 247, 250, 126 N. W. 899, 900 (1910), we listed the following as the prerequisites to bona fide purchaser status under the recording statute:

"* * * (1) the payment of a valuable consideration; (2) good faith, without purpose to take an unfair advantage of third persons; and (3) absence of notice, actual or constructive, of outstanding rights of others."

The last element is at issue in this case. Republic contends that although a person may have actual knowledge of a prior unrecorded conveyance, if he reasonably understood the prior conveyance to be subordinate to his own, he is without notice and may qualify as a bona fide purchaser. Republic argues that before it can be charged with having notice under the recording statute, it must have had either actual or constructive knowledge that the lease created an interest inconsistent with its own inter-

est.[3] None of the cases cited by Republic supports in the least its proffered rule. Only one, Watts v. Lundeen, 165 Minn. 300, 206 N. W. 444 (1925), even involves an unrecorded prior conveyance. That case, however, is readily distinguishable because the plaintiff in Watts knew nothing of the prior conveyance nor did the record disclose any facts which would have put it on notice.

Marquette, on the other hand, argues that knowledge of the mere existence of a prior unrecorded conveyance, in this case a lease, constitutes notice under the recording statute. Both case law and secondary sources articulate the rule as stated by Marquette. See, e. g., Errett v. Wheeler, 109 Minn. 157, 123 N. W. 414 (1909); Fifield v. Norton, 79 Minn. 264, 82 N. W. 581 (1900); McAlpine v. Resch, 82 Minn. 523, 85 N. W. 545 (1901); 20 Dunnell, Dig. (3 ed.) § 10076; 6 Powell, Real Property (Perm. ed.) par. 916, p. 288. No cited case involves facts similar to those of the case at bar, but the policy reasons underlying the rule are no less persuasive in this case.

The purpose of the recording act is to protect third parties from claims against their property where such claims arise out of transactions in which they were not participants and about which they knew nothing. Republic is not such a third party. The conveyances of the mortgage to First Bank and the lease to Marquette were in effect part of the same transaction, the terms of which were dictated in large part by Republic. The recording

---

[3] The trial court adopted Republic's theory. Its memorandum reflects some confusion, however, between the notice and subordination agreement arguments. It states: "* * * Republic had either actual or constructive notice of the existence and exact nature of the lease. But it did not have notice that the 'quality' of Olmsted's interest was a first lien capable of defeating its status as a bona fide purchaser. The agreement of the parties was to the contrary."

The lack-of-notice and agreement arguments are logically inconsistent. The fact of an agreement implies knowledge of facts which, in the absence of an agreement, would give rise to a different result. Such knowledge is the equivalent of notice.

statute cannot in and of itself create rights in Republic superior to the rights of Marquette when Republic knew of Marquette's prior unrecorded conveyance. Republic's knowledge of the pre-existing lease precludes its status as a subsequent purchaser in good faith.[4]

Republic raises a novel argument. If its theory were to prevail, the beliefs of one party would determine the rights of another, however innocent the latter. We will not so casually extinguish the rights of an innocent party.[5] See Bergstrom v. Johnson, 111 Minn. 247, 252, 126 N. W. 899, 901 (1910).

■ *Implied Subordination Agreement*

There is ample evidence to support the conclusions that Republic intended its mortgage to be prior to the lease and that both First Bank and Lorraine understood Republic's intention and purported to give it that effect. The dispositive issue is whether Marquette, in fact or in law, agreed to subordinate its lease. The

---

[4] Republic cites the case of Target Stores, Inc. v. Twin Plaza Co. 277 Minn. 481, 153 N. W. 2d 832 (1967), as additional support for its argument that it had no reason to know the lease represented a claim adverse to its own. We held in Target that a "lease" of space in a building never constructed was merely an agreement to lease, passed no interest in land, and did not render title to the real estate unmarketable upon sale to a third party. Target is not dispositive of the instant case for several reasons. (1) The operation of the recording statute was not at issue in Target. (2) That case, unlike this one, involved a third party who was not a participant in the earlier "lease" transaction. (3) Whatever the nature of the interest created by the leases in Target and in this case, plaintiff's mortgage on a building not yet constructed was no less executory. In this case the building was constructed as planned; and plaintiff's obligation to buy the mortgage was in fact contingent upon completion of construction. (4) Finally, plaintiff does not argue that defendant's lease was not a recordable conveyance. Whatever the nature of defendant's lease, plaintiff took subject to it.

[5] Our holding in this case intimates nothing with regard to what the result would be were defendant not innocent. No argument is made that Marquette knew of Republic's intention or belief nor does any evidence adduced at trial support such an argument.

trial court found that it did. Its findings are not to be set aside unless clearly erroneous. Rule 52.01, Rules of Civil Procedure.

The trial court relies upon circumstantial evidence to support its finding of an implied subordination agreement. In order to support a particular verdict, circumstantial evidence need not be such that it must exclude every other theory, but the theory embraced by the verdict must outweigh any conflicting inferences. Martelle v. Thompson, 283 Minn. 279, 167 N. W. 2d 376 (1969); Raymond v. Baehr, 282 Minn. 102, 163 N. W. 2d 54 (1968). Where the evidence, viewed cumulatively, could sustain with equal justification either of two inconsistent inferences, the proponent of the theory has failed to meet its burden of proof. Smith v. Kahler Corp. Inc. 297 Minn. 272, 211 N. W. 2d 146 (1973); E. H. Renner & Sons, Inc. v. Primus, 295 Minn. 240, 203 N. W. 2d 832 (1973); Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. 2d 225 (1953); Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. 2d 121 (1945). Mere speculation or conjecture will not support a verdict. Smith v. Kahler Corp. Inc. *supra*; Martelle v. Thompson, *supra*; Raymond v. Baehr, *supra*. These principles guide our consideration.

The court bases its finding of an implied subordination agreement on inferences drawn from three clauses in the lease and from the conduct of the parties. One such clause gives Marquette the right to cure any defaults of Lorraine under any mortgage placed upon the property.[6] A second clause gives Marquette an option to purchase the building. Republic argues that neither of these clauses would be necessary were Marquette's lease not subject to forfeiture in the event of a mortgage foreclosure. On oral argument, however, Marquette contended that the actual

---

[6] This clause provides: "After receipt of notice, whether from Landlord [Lorraine] or otherwise, Tenant [Marquette] shall, during the term of this lease, have the unrestricted right at its option to pay and perform any of Landlord's obligations under said Ground Lease or any said mortgage [now or hereafter placed] upon the real property described in Section 101 of this lease and to cure any default thereunder."

purpose of the cure provision was to protect its option to purchase. The only testimony at trial with regard to the cure provision was that of the president of Lorraine, who stated that the clause was required by Mr. Scallen, an officer of Marquette.

Where the evidence is documentary, we are as qualified as the trial court to draw inferences therefrom. In re Trust Known as Great Northern Iron Ore Properties, 308 Minn. 221, 243 N. W. 2d 302, certiorari denied sub nom. Arms v. Watson, 429 U. S. 1001, 97 S. Ct. 530, 50 L. ed. 2d 612 (1976). In the absence of any testimony on the issue of Marquette's intent with respect to inclusion of that clause, we will not hold that, as a matter of law, the cure provision implies subordination.[7] The inference that its purpose was to protect Marquette's option to purchase would be equally justified. Similarly, an inference of subordination drawn from the option to purchase clause would be conjectural.

The third clause relied upon by the court is Lorraine's covenant that "except for said aforementioned Ground Lease and any said mortgage [now or hereafter placed against the real property]," it would "* * * keep said real property * * * free and clear of any liens and encumbrances." This clause says nothing explicitly about priorities. An inference that the mortgage is subordinate is arguably as consistent with that phrase as is an inference that the mortgage is superior.

The court also considered the conduct of the parties, apart from the lease itself, to support its finding of an implied subordination agreement. The court found:

"That, it was understood by Olmsted that the lease in question was necessary to the granting of a loan and, without a loan, the lease would have been of no effect and the building would not have been built."

---

[7] The weakness of the trial court's inference is suggested by the fact that the clause must then as readily support the inference that the lease would be subordinate to any and all subsequent mortgages placed on the property.

With respect to this finding of fact, it should be noted that this financing arrangement was a business transaction intended to be mutually beneficial to Marquette and Republic. Marquette acquired new facilities in a building bearing its name. Republic is an insurance company which presumably engaged in this transaction as a profitmaking venture and wanted a prime tenant to assure itself that it was economically sound to build a large office building in Rochester. It would be conjecture to say the fact that Marquette knew its lease was a prerequisite to the loan implies an agreement by Marquette to subordinate its lease to the mortgage. The fact that Marquette knew its 50-year lease of a substantial portion of the building was essential to republic would seem to be equally consistent with—or at least no less conjectural than—Marquette's receiving priority as an inducement to commit itself to a 50-year lease.

The court also found:

"That, although Olmsted retained an executed original of the lease after it was signed on June 22, 1964, Olmsted did not file said Lease with the Register of Deeds for Olmsted County."

The problem with this finding of fact is that prior recording establishes priority only where the first to record was not on notice of the unrecorded prior conveyance. Thus, Marquette did not need to record the lease in order to protect itself against First Bank, who knew of and required its lease. Republic's further observation that "Marquette obviously allowed First Bank to handle details of recording thus permitting the mortgage to be recorded prior to the lease," is subject to the same objection.

Viewed cumulatively, the inferences are not enhanced. Republic has failed to meet its burden of proof on this issue.[8] No

---

[8] The trial court seems to have taken judicial notice that a financial institution in Republic's position would structure the transaction so as to have a first mortgage subject to no encumbrances and to have charged Marquette with this knowledge. This is not a proper subject for judicial notice. If it is in fact the custom, it has not been proven.

subordination agreement having been proven, the prior conveyance is superior. In the event of a foreclosure sale the purchaser will take the property subject to Marquette's lease.

Reversed.