Stanley J. LANDMARK and Judith E. Landmark, Plaintiffs,

v.

Louis A. SCHAEFBAUER, Defendant.

In re Stanley J. LANDMARK and Judith E. Landmark, individually and d/b/a Landmark Donut-Hole Pastry and Catering, Debtors.

Bankruptcy No. 5–83–66.
Adv. No. 5–84–3.

United States Bankruptcy Court,
D. Minnesota, Fifth Division.

Aug. 17, 1984.

John N. Nys, Duluth, Minn., for plaintiffs.

Shawn M. Dunlevy, Duluth, Minn., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on before the undersigned United States Bankruptcy Judge on June 7, 1984, upon cross-Motions for Summary Judgment made by Plaintiffs and Defendant. Upon the parties' respective Motions, supporting Declarations, and Stipulation of Fact, the arguments of counsel, and all of the other files, records, and proceedings herein, the Court makes the following Findings of Fact, Conclusions of Law, and Order for Judgment.

## FINDINGS OF FACT

Plaintiffs Stanley J. Landmark and Judith E. Landmark (hereinafter "Debtors") filed a Petition under Chapter 7 of the Bankruptcy Code in this Court on March 15, 1983. Their attorney at that time was one Arvid Nasi, of Hibbing, Minnesota. On Schedule B–1 of this Petition, Debtors scheduled their homestead property, legally described as:

Lot 27, Block 3, HIGHLAND PARK, Hibbing, St. Louis County, Minnesota

and assigned a market value of $60,000.00 to their interest in it. On Schedule A–2 of their Petition, Debtors scheduled two mortgages allegedly attaching to this homestead, a first mortgage in favor of Security State Bank of Hibbing, Minnesota, in the amount of $23,530.37 (the validity of which is not at issue in this proceeding), and a second mortgage in favor of Defendant Louis A. Schaefbauer in the amount of $37,000.00. On Schedule B–4 of their Petition, Debtors claimed the equity in their homestead as exempt in the amount of $60,000.00, having elected to utilize the state-law exemption for homestead equity under MINN.STAT. § 510.01. Other than their homestead, Debtors exempted their household goods and a 1979 GMC station wagon on this original B–4 Schedule.

Debtors executed the scheduled second mortgage in favor of Defendant on or about March 11, 1981, in the original principal amount of $20,000.00. When Debtors' Petition for Relief was filed in this Court on March 15, 1983, neither Debtors nor Defendant had recorded this mortgage in the office of the County Recorder of St. Louis County, Minnesota. On March 28, 1983, Arvid Nasi, still attorney of record for Debtors in this Court, recorded this mortgage in the office of the St. Louis County Recorder as Document No. 357433.

On June 1, 1983, Arvid Nasi filed amended Schedules B–2 and B–4 on behalf of Debtors in this Court. Debtors amended Schedule B–2 to reflect a corrected net equity value in a life insurance policy of $3,455.58 (amended from an original assigned value of $800.00), and amended Schedule B–4, now electing the federal exemptions under 11 U.S.C. § 522(d). They now alleged they had no equity in their homestead as a result of the offset of the outstanding balances on the first and second mortgages against the homestead value of $60,000.00. Debtors claimed the full equity in the life insurance policy as exempt from claims of the trustee, pursuant to 11 U.S.C. § 522(d)(5). No objection to their claim of exemption was made during the pendency of these proceedings.

Defendant took no action during the pendency of Debtors' Chapter 7 proceedings to enforce his mortgage against Debtors' homestead. The Chapter 7 trustee took no action to avoid the mortgage in favor of Defendant, due to Debtors' claim of exemption to the equity, if any, in their homestead.

Debtors were granted a discharge in their Chapter 7 proceedings on July 13, 1983. No post-petition reaffirmation agreement between Debtors and Defendant on the debt obligation underlying the mortgage in favor of Defendant was presented to or approved by the Court at the discharge hearing held on August 26, 1983. Debtors' case was closed and their trustee was discharged by Order of this Court (Patrick J. McNulty, J.) on November 18, 1983. Debtors took no action in this or any other Court to avoid or otherwise annul the mortgage in favor of Defendant until they petitioned this Court to re-open their Chapter 7 proceedings on January 23, 1984. This Court (Patrick J. McNulty, J.) entered an Order re-opening Debtors' Chapter 7 proceedings on that date. On January 23, 1984, Debtors filed their Complaint in this adversary proceeding. They seek a judgment of this Court finding the mortgage to have been recorded in violation of 11 U.S.C. § 362, finding that the mortgage was as a result void, finding that Defendant was in contempt of Court for allegedly causing the mortgage to be recorded, and ordering Defendant to discharge the mortgage of record and pay them reasonable attorney fees and Court costs for this proceeding. Defendant seeks a judgment of this Court finding that his mortgage is valid and enforceable and finding that he is not in contempt of Court.

## CONCLUSIONS OF LAW

In their Complaint, Debtors allege that Defendant was in violation of 11 U.S.C. § 362(a)(4), which provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section ... 302 ... of this title ... oper-

ates as a stay, applicable to all entities, of—

(4) any act to create, perfect, or enforce any lien against any property of the estate...

■ Debtors cite this section of the Code in support of their position that, first, the mortgage in favor of Defendant is a nullity solely because it was recorded after the entry of the Order for Relief herein; and second, that Defendant is in contempt of Court because Arvid Nasi recorded the mortgage after the automatic stay commenced. Debtors base their argument upon the unspoken conclusion that the recording of the mortgage somehow created or perfected a lien against their homestead real estate. They admit that they executed the mortgage deed long prior to the filing of their Petition. The parties have stipulated that Defendant in no way sought to foreclose or otherwise "enforce" a mortgage lien against Debtors' homestead at any time after the filing of their Petition. The key question is, then, whether the mortgage was somehow "created" or "perfected" by the act of recording it. The legislative history of 11 U.S.C. § 362(a)(4) indicates that that subsection

... stays lien *creation* against property of the estate. Thus, taking possession to perfect a lien or obtaining court process is prohibited. To permit lien *creation* after bankruptcy would give certain creditors preferential treatment by making them secured instead of unsecured.

H.R.REP. NO. 95–595, 95th Cong., 1st Sess. 341 (1977); S.REP. NO. 95–989, 95th Cong., 2d Sess. 50 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5836, 6298. (emphasis added.) Congress's main concern in enacting Section 362(a)(4) was to prevent the post-petition creation of liens against property of the estate, so the status quo of creditors' security and priority would be preserved pending administration of the bankruptcy estate and allowance of the debtors' claim of exemption. If the mortgage was "created" and "perfected" prior to the filing of Debtors' Petition, the

act of Arvid Nasi in recording it cannot constitute a violation of the automatic stay. *Compare In Re Simpson*, 7 B.R. 41 (Bankr.D.Ariz.1980) (Where under the state law of cancellation of contract for sale of real estate the forfeiture of Debtor's interest as vendee was complete and valid prior to the filing of Debtor's bankruptcy Petition, the recording of a statutory affidavit of termination of forfeiture after the filing of the Petition does not violate the automatic stay.). If it was "created" but not "perfected" prior to the filing of Debtors' Petition, the act of recording can constitute a violation of the automatic stay, though the validity of the mortgage itself may not be affected. *In Re Munsey Corp.*, 10 B.R. 864 (Bankr.E.D.Pa.1981) (post-petition *filing* of financing statement to perfect security interest in equipment under Uniform Commercial Code did violate automatic stay and was a nullity.). If it was neither "created" nor "perfected" prior to the filing of Debtors' Petition, the act of recording was a violation of the automatic stay and the mortgage itself is a nullity, under the plain terms of Section 362 and the legislative history.

■ Under the Minnesota Recording Act,

Every conveyance of real estate shall be recorded in the office of the County Recorder of the County where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded, and as against any attachment levied thereon or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance.

MINN.STAT. § 507.34. A mortgage is a conveyance within the meaning of this statute. MINN.STAT. § 507.01. The Minnesota Supreme Court has held that "[t]he purpose of the Recording Act is to protect third parties from claims against their

property where such claims arise out of transactions in which they were not participants and about which they knew nothing." *Republic National Life Insurance Co. v. Marquette Bank and Trust Co. of Rochester,* 312 Minn. 162, 166, 251 N.W.2d 120, 123 (1977). It does not prevent an unrecorded but otherwise valid executed and acknowledged mortgage from being enforceable *as between the parties thereto. Seager v. Lamm,* 95 Minn. 325, 104 N.W. 1 (1905). *See also Paulson v. Clough,* 40 Minn. 494, 42 N.W. 398 (1889); *Scott v. Marquette National Bank,* 173 Minn. 225, 217 N.W. 136 (1927); *Staples v. Miller,* Minn., 319 N.W.2d 57 (1982). Therefore, under Minnesota state law the lien against Debtors' homestead under the mortgage in favor of Defendant was "created" long before the filing of Debtors' Petition in this Court, and the recording of the mortgage after the filing of their Petition did not serve to further "create" it.

Counsel for Debtors cites the case of *In Re Funket,* 6 C.B.C.2d 597 (Bankr.M.D.Pa. 1982) in support of Debtors' position that the recording of the mortgage rendered it a nullity. *Funket* involved the *post-discharge* recording of a real estate mortgage and was decided under 11 U.S.C. § 524(a)(2). The Court noted that a prior, subsequently withdrawn, recording of the same mortgage during the pendency of the bankruptcy case was in violation of Section 362(a)(4) and had been a nullity. The Court in *In Re Funket* did not engage in any. discussion of state law as to the pre-petition validity of an unrecorded mortgage. However, the Pennsylvania recording statute establishes that an unrecorded mortgage is invalid. 21 P.S. 621; *In Re Fisher,* 7 B.R. 490, 495 (Bankr.W.D.Pa.1980).

Thus, the *Funket* case is distinguishable from the instant case in that Minnesota law recognizes the validity and enforceability as between the parties of an unrecorded mortgage. (It may further be noted that the ultimate holding in the *Funket* case may be vitiated by the amendment to 11 U.S.C. § 524(a)(2) in Section 308 of the Bankruptcy Amendments and Federal Judgeship Act of 1984).

Thus, the act of Arvid Nasi in recording the mortgage was not an "act to ... create [a] lien against the property of the estate" which is stayed by 11 U.S.C. § 362(a)(4).[1]

The question of whether the mortgage was "perfected" by its filing is not as easily resolved. The term "to perfect" is given no special definition in the Bankruptcy Code. Under current usage in the legal and business communities, the term "to perfect" is generally understood as it is defined and applied under Article 9 of the Uniform Commercial Code, as promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, and enacted by the several states. Since Congress did not establish any special meaning to the term in the Bankruptcy Code, one might argue that it meant the term "to perfect" to be understood exclusively as it is defined in the Uniform Commercial Code. Under Minnesota law, Article 9 of the Uniform Commercial Code does not apply to mortgages against real estate. MINN.STAT. § 336.9–104. The Minnesota State Legislature has not used or applied the term "to perfect" in the Recording Act or in any of the other Minnesota Statutes governing real estate mortgages. Under this view, then, one could record a real estate mortgage against property of the estate after the filing of

---

**1.** In so holding, the Court makes no opinion as to the avoidability of the mortgage, as opposed to its validity or enforceability. In his Memorandum of Law, counsel for Defendant convincingly argues that Debtors do not have the power under 11 U.S.C. § 522(h) to exercise the authority of the trustee to avoid the mortgage under 11 U.S.C. § 544(a)(3), the ability of the trustee to exercise the power of a hypothetical bona fide purchaser of Debtors' homestead to avoid a mortgage which was not recorded as of the date

and time of filing of Debtors' Petition. Debtors are not granted this particular avoidance power, inasmuch as the original grant of the unrecorded mortgage was their voluntary act. The trustee, however, may have had the authority to independently utilize this avoidance power to preserve the transfer for the benefit of the estate under 11 U.S.C. § 551, regardless of Debtors' claim of exemption to the homestead. *In Re Hastings,* infra.

the bankruptcy Petition without "perfecting" it in violation of Section 362(a)(4). However, the process of recording under the Minnesota Recording Act and the process of perfection under the Uniform Commercial Code serve the same goals of notice to third parties and establishment of priorities as between competing secured creditors. *Compare* MINN.STAT. 507.34 *with* MINN.STAT. § 336.9–301 *et seq.*, especially MINN.STAT. § 336.9–312. Additionally, to limit the application of the term "perfect" to only those security interests in non-real property governed by Article 9 of the Uniform Commercial Code would allow the recording of liens against real property in the estate while prohibiting the perfection of security interests in personalty of the estate. This would allow certain acts prejudicial to the orderly administration of bankruptcy estates to proceed while certain other acts equally prejudicial would be barred. Congress could not have intended such a result. The late Judge Jacob Dim of this Court apparently so assumed, without discussion, in *In Re Hastings*, 4 B.R. 292 (Bankr.D.Minn.1980). The Court therefore finds that the recording of a real estate mortgage is an "act to ... perfect ... [a] lien against property of the estate" which is stayed by 11 U.S.C. § 362(a)(4). It therefore follows that the act of Arvid Nasi in recording the mortgage in the instant case, regardless of the principals for whom he was acting as agent, was in violation of the automatic stay and was a nullity. As discussed above, however, only the *recording* of the mortgage is thereby rendered a nullity; the validity and enforceability of the mortgage as between Debtors and Defendant, established by a consensual act long before the filing of Debtors' Petition, are not affected by the nullity of the act of recording. The Court must therefore order Defendant to remove the mortgage from the record.[2]

In their Complaint, Debtors have cast their claim that the mortgage is a nullity separately from their claim that Defendant was somehow in contempt as a result of the actions of Arvid Nasi in recording the mortgage. The issue of the nullity of the mortgage and the nullity of its recording are ripe for summary judgment under F.R. C.P. 56, inasmuch as the parties entered into a Stipulation of Fact upon which the Court concludes that there is no genuine issue of material fact as to these issues. At oral argument, counsel for both parties conceded that the factual issue of whether Arvid Nasi was acting on behalf of Debtors or on behalf of Defendant was still unresolved. The question of whether Defendant was in contempt as a result of Mr. Nasi's actions (and the resultant issue of whether he should be ordered to pay Debtors' attorney fees as a contempt sanction) can be severed from the issue of the validity of the mortgage and the nullity of the act of recording it. *In Re Munsey Corp.*, *supra*, at 866 n. 10. At oral argument, counsel for Debtors advised the Court that he would continue to join the issue of contempt. If Mr. Nasi was acting as agent of Defendant in recording the mortgage, it would be open to the Court to find Defendant in contempt and impose appropriate sanctions. However, if Mr. Nasi was acting as agent of Debtors, it would be impossible to find Defendant in contempt of Court. Because the question of Mr. Nasi's authority and agency status is still unresolved, there is a genuine issue of material fact on the issue of contempt which renders the issue inappropriate for resolution by summary judgment under F.R.C.P. 56. Therefore, this issue will be set for trial before the Court.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That judgment be entered in favor of Plaintiffs-Debtors finding and adjudging that the act of Arvid Nasi in recording that

---

**2.** In so ordering Defendant, the Court renders no opinion on his right to re-record the mortgage, as this issue is not before the Court. It may be that Defendant has the right to re-record the mortgage, particularly in view of the amendment to 11 U.S.C. § 524(a)(2) enacted in Section 308 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, to be first effective on October 8, 1984.

certain mortgage executed by Plaintiffs-Debtors Stanley J. Landmark and Judith E. Landmark on the following described real estate located in St. Louis County, Minnesota:

Lot 27, Block 3, HIGHLAND PARK, Hibbing, St. Louis County, Minnesota

in the office of the County Recorder for St. Louis County, Minnesota, on March 11, 1981, as Document No. 357433, was in violation of 11 U.S.C. § 362(a)(4) and was and is a nullity.

2. That judgment be entered in favor of Plaintiffs-Debtors ordering Defendant to remove the mortgage described in Paragraph 1 of this Order from the records in the office of the County Recorder of St. Louis County, Minnesota, subject to Defendant's right, if any, to re-record said mortgage.

3. That judgment be entered in favor of Defendant, finding and adjudging that the mortgage described in Paragraph 1 of this Order is otherwise valid and presently enforceable to the extent that an unrecorded real estate mortgage is enforceable under Minnesota state law.

4. That the contempt issue joined by Plaintiffs-Debtors' Complaint shall be set for trial before this Court at the earliest available date.