DeRoy Anderson et al., Appellees and Cross-Appellants, v.
Farm Bureau Insurance Company of Nebraska, a
Corporation, Appellant and Cross-Appellee.

360 N.W.2d 488

Filed January 4, 1985.   No. 83-530.

Robert G. Pahlke of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

John F. Simmons of Wright, Simmons & Selzer, for appellees.

Boslaugh, Hastings, Caporale, Shanahan, and Grant, JJ.

Grant, J.

This is an action brought by plaintiffs-appellees, DeRoy Anderson and Gerald Anderson, father and son, who farm lands as a partnership in Banner County, Nebraska. Plaintiffs are collectively referred to as Andersons or individually by the first name of each. The Andersons brought the action to recover under the theft provision of their farmowners' insurance policy issued by defendant, Farm Bureau Insurance

(1)

Company of Nebraska (hereinafter Farm Bureau). The theft provision of the policy under which the Andersons sought recovery provides coverage for "direct loss by theft (but excluding escape, mysterious disappearance, inventory shortages, wrongful conversion and embezzlement)."

At the trial the Andersons generally presented evidence showing they did not have as much wheat to take out of two of their storage facilities as they had put into those two facilities. The described storage facilities were a round bin and a Quonset hut, located near Highway 71, or, as shown by Gerald's testimony, "on the place on the highway that Dad [DeRoy] owns . . . ." Farm Bureau made a motion for a directed verdict in its favor, both at the conclusion of the Andersons' case and at the conclusion of all the evidence. These motions were overruled, and the case was submitted to the jury, which returned a verdict for the Andersons, awarding $8,690.76 in damages. Farm Bureau filed a motion to compel a remittitur and a motion for new trial. The district court ordered the motion for new trial be granted unless the Andersons consented to a reduction of the judgment to reflect the amount of coverage the Andersons had paid for under the coinsurance clause of the policy. The Andersons consented, and judgment was entered in their favor in the reduced amount of $5,080.83. Farm Bureau appeals from the overruling of its motions for a directed verdict, and the Andersons cross-appeal from the order reducing their damages. Although a remittitur has been ordered and the jury verdict consequently reduced, Farm Bureau, the party for whose benefit the remittitur was ordered, may appeal from the reduced judgment, and the Andersons may cross-appeal. Neb. Rev. Stat. §§ 25-1929 and 25-1936 (Reissue 1979).

In its appeal Farm Bureau assigns four errors, including the assignment that the trial court erred in overruling Farm Bureau's motion for a directed verdict made after both Andersons and Farm Bureau had rested. We determine that this assignment of error is correct, and find that Farm Bureau's motion for a directed verdict should have been sustained and the case dismissed. This disposition of the case makes it unnecessary to consider Farm Bureau's other assignments of

error, and also disposes of the Andersons' cross-appeal. For the reasons hereinafter stated the judgment of the trial court is reversed, the cause is remanded with directions to dismiss the Andersons' petition, and the Andersons' cross-appeal is dismissed.

The evidence presented showed that Gerald and DeRoy Anderson are experienced farmers who, among other crops, produce wheat. They store some of their harvested wheat in a bin and a Quonset hut near Highway 71. In 1979 these storage facilities were 10 miles from the home of DeRoy and 6 miles from the separate residence of Gerald. In the summer of 1977 the Andersons filled the Quonset hut with part of their harvested wheat crop. In March 1978 they cleaned out what was left of the 1977 crop in the bin near Highway 71 and also took 581 bushels from the Quonset hut. The Andersons testified that in 1978 they put 8,240 bushels of wheat in the round bin near Highway 71.

The Andersons produced records and testimony to show a total of 20,834 bushels of wheat were in the Quonset hut and bin on January 1, 1979. The Andersons further testified that 2,058 bushels were sold to the Kimball County Grain Co-operative between April 26 and May 16, 1979, and that in November of 1978 they had entered into a contract with a Wyoming elevator company, called D.R.W. Inc., to sell 16,000 bushels of wheat to D.R.W. at a price of $2.68 per bushel. It was agreed between the Andersons and D.R.W. that a written contract for this sale and purchase of 16,000 bushels of wheat was executed, but at the time of trial the contract itself could not be produced because it had disappeared both from the Andersons' and the D.R.W. files. Between March 15 and May 30, 1979, the testimony showed that 15,490 bushels were picked up by D.R.W., pursuant to the contract. The Andersons claimed 3,286 bushels of wheat were stolen from the bin and/or Quonset hut, because in cleaning out the bin and Quonset hut only 17,548 were sold by the Andersons—2,058 to the Kimball elevator and 15,490 to D.R.W. Inc. This total amount was 3,286 bushels short of the 20,834 bushels their records showed were stored there.

Under the terms of the contract between the Andersons and D.R.W. Inc., D.R.W. was to pick up and load the wheat at the

bin and the Quonset hut near Highway 71. Because D.R.W. did not always show up when it informed the Andersons, and because it took over an hour to install and take down the horizontal powerhead attached to the bin, enabling the removal of grain, the powerhead was left on and the Quonset hut left unlocked so that D.R.W. would have easy access. The powerhead was installed sometime prior to March 15, 1979, when D.R.W. picked up the first load. The Quonset hut was unlocked on April 26, 1979; and from the time of the installation of the powerhead and the unlocking of the Quonset hut, the wheat was unsecured and easily accessible to anyone.

On May 7, 1979, D.R.W. informed the Andersons that there was not enough wheat remaining in the Quonset hut to fill the 16,000-bushel contract. It was on this day that the Andersons first discovered a shortage, and Beulah Anderson, wife of DeRoy, noted on her calendar, "Where's the wheat?" The Andersons testified that there was never unusual spillage of wheat near the named storage facilities, nor were there any strange or unusual tire tracks, nor was there any evidence of forced entry or exit.

On June 25, 1979, DeRoy contacted a Farm Bureau employee, Sandra Faden. On July 18, 1979, DeRoy visited with Sheriff Robert Stoddard about the wheat loss. On October 3, 1979, Lyle Bown, claims adjuster for Farm Bureau, met with DeRoy at the Quonset hut. Eventually, the Andersons were notified by Farm Bureau that their claim was denied.

The dispositive question presented is whether there was sufficient evidence to support the verdict. For this purpose we must consider the evidence in the light most favorable to the Andersons and give them the benefit of all inferences that reasonably can be drawn from the evidence. In *Popken v. Farmers Mutual Home Ins. Co.*, 180 Neb. 250, 255, 142 N.W.2d 309, 313 (1966), we stated:

> The plaintiffs may establish their case by circumstantial evidence as well as by direct evidence.
>
> However, circumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the

conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom. Mullikin v. Pedersen, 161 Neb. 22, 71 N.W.2d 485.

The evidence must be such as to make the plaintiffs' theory of causation reasonably probable, not merely possible.

In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Weston v. Gold & Co., 167 Neb. 692, 94 N.W.2d 380.

Where several inferences are deducible from the facts presented, which inferences are opposed to each other, but equally consistent with the facts proved, the plaintiffs do not sustain their position by a reliance alone on the inferences which would entitle them to recover. Shamblen v. Great Lakes Pipe Line Co., 158 Neb. 752, 64 N.W.2d 728.

Conjecture, speculation, or choice of quantitative possibilities are not proof. There must be something more which would lead a reasoning mind to one conclusion rather than to the other.

See, also, *Raff v. Farm Bureau Ins. Co.*, 181 Neb. 444, 149 N.W.2d 52 (1967).

The Andersons have failed to meet their burden of proof in this case; for while an inference of theft is possible, it is not the only conclusion which can reasonably be drawn, nor is it the prime contender in this insurance terms tournament: mysterious disappearance, embezzlement, and wrongful conversion are, at the very least, equally formidable.

If, as the Andersons contend, an inference of theft may be fairly and reasonably drawn from the evidence that they had stored 20,834 bushels in the Quonset hut and bin and sold only 17,548 bushels in 1979, equally justifiable inferences, consistent with the facts proved and inconsistent with the Andersons' right to recover, are that the wheat was stored in another bin, that an employee truckdriver for D.R.W. or D.R.W. itself took a load

of wheat for himself or itself, or that D.R.W. or its drivers failed to keep track of all the wheat they hauled away.

The Andersons' harvest records are kept by Beulah Anderson in a ledger identified as exhibit 2 in the trial. The record shows the harvest according to field in each year and the storage facility to which the wheat was trucked. The Andersons contend 13,175 bushels of wheat were stored in the Quonset hut in 1977. Of these 13,175 bushels, 855 bushels were harvested off the "Blake" place and not recorded in exhibit 2. These 855 bushels were recorded as having been deposited in the Quonset hut by Gerald on a separate piece of notebook paper identified as exhibit 3 at the trial. When asked why no bushels were recorded under the "Blake" heading, Beulah answered that this grain was taken to storage facilities elsewhere. Likewise, 2,370 bushels from the 1978 harvest off the "school" section are recorded by Gerald as being stored in the east bin, but Beulah, noting the absence of any recording under the school section in her notebook, testified the wheat had been stored by Gerald elsewhere. Thus, Beulah's testimony would suggest 3,225 bushels of wheat had not been stored in the Quonset hut and bin, as the Andersons contend.

D.R.W. had free access to the bin from the time the powerhead was installed and to the Quonset hut from the time it was unlocked. Not only could one of its drivers have misappropriated the grain but the corporation itself may have inadvertently taken more than it paid for. None of these actions constitute "theft" under the terms of the insurance policy in question.

Even though DeRoy later denied it, he had indicated to both the insurance company and D.R.W. that he suspected the D.R.W. drivers; and the Andersons, although they felt the business practices of D.R.W. were less than efficient, did not themselves keep track of the number of loads and weights taken from the bin and Quonset hut storage facilities.

Ultimately, the evidence goes no further than to give support to at least three inconsistent inferences, and the judgment must go against the parties who have the burden of proof. In this connection, DeRoy summed up the situation in his answers on cross-examination, when he testified:

Q.    [Farm Bureau's counsel] And as a matter of fact you cannot say the wheat was stolen?

A.    It wasn't there.

Q.    But you don't know that it was stolen, you testified to that, didn't you?

A.    Our inventory come up short, that is all we know.

The judgment of the trial court is reversed, and the cause is remanded with directions to dismiss the Andersons' petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

KRIVOSHA, C.J., participating on briefs.

WHITE, J., not participating.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority, but believe the majority has unnecessarily promoted a "circumstantial evidence" rule in civil cases which I believe to be outmoded and not proper in light of present day circumstances. My reason for concurring in the result is very simple. The policy in question clearly required the district judge to sustain the motion for directed verdict under the facts in this case.

Coverage D3(a) of the policy provides: "Any direct losses by theft shall be construed to include only losses where clear and satisfactory evidence is established regarding the theft." The evidence offered by the insureds did not satisfy that requirement. The Andersons could not recover when the most the evidence established was that there was opportunity for someone to steal the grain. The reason for sustaining the motion for a directed verdict is not because of the circumstantial evidence rule but, rather, because of the terms of the policy.

But for the language of the policy, I believe the majority opinion would be in error. While I believe that the majority has accurately set out the Nebraska rule regarding circumstantial evidence in a civil case as that rule has been on occasion announced by this court, I believe that if one reviews that rule it will be apparent that the rule is both inconsistent with what we have now done in criminal cases, see *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981), and internally inconsistent.

The rule, as set out in the majority opinion, reads as follows:

(1) "The plaintiffs may establish their case by circumstantial evidence as well as by direct evidence.

(2) "However, circumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the *only one* that can fairly and reasonably be drawn therefrom. [Citation omitted.]

(3) "The evidence must be such as to make the plaintiffs' theory of causation *reasonably probable*, not merely possible.

(4) "In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is *any evidence* upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. [Citation omitted.]

(5) "Where several inferences are deducible from the facts presented, which inferences are opposed to each other, but equally consistent with the facts proved, the plaintiffs do not sustain their position by a reliance alone on the inferences which would entitle them to recover. [Citation omitted.]

(6) "Conjecture, speculation, or choice of quantitative possibilities are not proof. There must be something more which would lead a reasoning mind to one conclusion rather than to the other."

(Emphasis supplied.) Quoting *Popken v. Farmers Mutual Home Ins. Co.*, 180 Neb. 250, 142 N.W.2d 309 (1966). I have numbered the paragraphs simply for ease of discussion.

To begin with, I believe the rule as we have formulated it over the years, and as we continue to repeat it now, is internally inconsistent. In paragraph (2) we require that in order for the judgment to be sustained, and, again, presumably before the court may submit the matter to the jury, the circumstantial evidence must be such that the conclusion reached by the jury is the only one that can be fairly and reasonably drawn therefrom.

Then, in paragraph (3), we say that the evidence must be such as to make the plaintiffs' theory of causation reasonably probable, not merely possible. It seems to me that if the conclusion reached is the only reasonable one, it must necessarily be reasonably probable. The converse, however, is not logically required to be true. A conclusion could be reasonably probable, yet not be the only reasonable conclusion. Nor is the "only reasonable conclusion" theory consistent with paragraph (4), which states that the trial court's examination is not to determine whether the conclusion reached is the only one that can be reached but, rather, whether the evidence is such that the jury can reach a conclusion advocated by the party introducing the circumstantial evidence.

The "only reasonable conclusion" test requires that the circumstantial evidence must in effect disprove every theory other than the one upon which the party offering the evidence relies. This is a stricter standard than that which we now require in criminal cases. In *State v. Buchanan, supra* at 28, 312 N.W.2d at 689, we said: "One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt." The net effect of the *Buchanan* decision was to declare that in criminal cases one may be convicted on the basis of circumstantial evidence even though the conclusion reached by the jury is not the *only* one that can fairly and reasonably be drawn therefrom. It seems inappropriate for us to continue to maintain a much more stringent rule in civil cases than in criminal cases, given the fact that criminal cases require proof beyond a reasonable doubt and civil cases require only that proof be established by a preponderance of the evidence. It appears to me that that is not a consistent or logical position for the law to take.

Furthermore, it appears to me that the rule herein in *Anderson* is in conflict with what this court previously said in *Danielsen v. Richards Mfg. Co., Inc.*, 206 Neb. 676, 294 N.W.2d 858 (1980). While we cited the "only reasonable conclusion" rule in *Danielsen*, we then went on to say, in syllabus 2. of that case:

> Conjecture, speculation, or choice of possibilities is not proof. However, where there is evidence which will lead a reasoning mind to one conclusion rather than another, the evidence will be held to support the verdict. The circumstantial evidence must be such as to make plaintiff's contention as to the fact reasonably probable, not merely possible.

Though the language is a little confusing, what is clear is that in *Danielsen* we did not require that before circumstantial evidence be admitted it appear that only one conclusion could be reasonably reached. We permitted the trial court to submit the case to the jury, including evidence that the equipment used in the operation may or may not have been supplied by the defendant, depending upon whether the jury believed the circumstantial evidence. In approving the district court's submission of the evidence to the jury, we said in *Danielsen, supra* at 681, 294 N.W.2d at 861:

> "The evidence must be such as to make the plaintiff's theory of causation *reasonably probable*, not merely possible." [Citation omitted.] Applying that principle to the present case, and assuming that the evidence is wholly circumstantial, the evidence was sufficient to make the identification of the source of the broken rongeur reasonably probable and not merely possible. We hold that the evidence was sufficient to permit the jury to find, with reasonable certainty, that Richards was the supplier of the rongeur used in the surgery performed on the plaintiff.

(Emphasis supplied.) The lesson of *Danielsen* seems to be that while we require that circumstantial evidence have some probability, we do not require it to be such that the jury can reach only *one* conclusion.

In the case of *Arterburn v. St. Joseph Hospital & Rehabilitation Center*, 220 Kan. 57, 61, 551 P.2d 886, 890 (1976), the Kansas court discussed the circumstantial evidence rule in civil cases, saying:

> Circumstantial evidence, in a civil case, in order to support a verdict need not rise to that degree of certainty which will exclude every reasonable conclusion other than

that reached by the jury. It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, although some other inference equally reasonable might be drawn therefrom [citation omitted].

The Kansas court went on to say at 63, 551 P.2d at 892:

Therefore when a number of possible causes are shown for the damage to a plaintiff in a civil case, some of which are attributable to the defendant, while others are not, the plaintiff must show by a preponderance of the evidence to the satisfaction of the jury, that the cause attributed to the defendant is more probable than that attributed to other persons or agencies. There must be a rational basis for concluding it is more probable than not that the defendant's negligence caused the plaintiff's damage. It is not necessary for the plaintiff to eliminate all other possible causes of his injury in order to present a jury question [citation omitted].

Moreover, in *Smith, Aplnt. v. Bell Telephone Co. of Pa.*, 397 Pa. 134, 137, 153 A.2d 477, 479 (1959), the Pennsylvania court noted:

Although some of the formulations appear to be mutually inconsistent, they have sometimes been used together. . . . The formula that "the circumstances must be so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion plaintiff advances" is not a correct statement of the rule to be applied by the judge on deciding a motion for either a nonsuit or binding instructions. If that were the rule what would be the province of the jury? In no case where there was more than one reasonable inference would the jury be permitted to decide. Insofar as this rule is stated in our cases it is disapproved.

My quarrel is simply with our continuing to promote a rule of law in civil cases which requires that before circumstantial evidence may be sufficient to support a verdict, and therefore sufficient to be submitted to the jury, the conclusion to be reached must be the *only one* that can be fairly and reasonably drawn. I suggest the better rule is what I would describe as the

"mere reasonableness" test.

This test may be described as expressed by the Connecticut Supreme Court in *Console v. Nickou*, 156 Conn. 268, 275, 240 A.2d 895, 898 (1968), wherein it said:

> "The test of the sufficiency of proof by circumstantial evidence is whether rational minds could reasonably and logically draw the inference. *Andrea v. New York, N.H. & H.R. Co.*, 144 Conn. 340, 344, 131 A.2d 642; *Pierce v. Albanese*, 144 Conn. 241, 256, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21. The proof need not be so conclusive that it precludes every other hypothesis. It is sufficient if the proof produces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact to be inferred is true. . . ."

See, also, *Wiley v. United Fire & Casualty Company*, 220 N.W.2d 635 (Iowa 1974); *Martelle v. Thompson*, 283 Minn. 279, 167 N.W.2d 376 (1969); *Pennsylvania Glass Sand Corp. of Okl. v. Ozment*, 434 P.2d 893 (Okla. 1967).

If I were limited in my decision to the circumstantial evidence rule and not to the language of the policy, I would have affirmed the decision.

CAPORALE, J., concurring in the result.

I join in that portion of Chief Justice Krivosha's concurring opinion which observes that the result reached by the majority is required by the language of the policy. The case should therefore have been decided on that basis. I am unwilling to review the civil circumstantial evidence rule, or to speculate as to whether its rationale is still viable, when the facts of the case before us do not require that we engage in either exercise.