PILLANDCO, INC., et al., Respondents,

v.

STATE of Minnesota, Appellant,

Henry F. Brown, et al., Defendants.

No. A05–1611.

Court of Appeals of Minnesota.

July 25, 2006.

Paul B. Kilgore, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, for respondents.

Mike Hatch, Attorney General, Amy V. Kvalseth, Assistant Attorney General, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; KLAPHAKE, Judge; and PETERSON, Judge.

## O P I N I O N

PETERSON, Judge.

In this appeal from a judgment, appellant State of Minnesota contends that the

district court erred in concluding that respondents demonstrated by clear and convincing evidence that they are the owners of the severed mineral interests in a 40-acre parcel of land and that the statutory requirements for filing verified statements regarding the severed mineral interests were met. We affirm in part and remand in part.

## FACTS

■ To understand the facts relevant to the issues raised in this action, it is helpful to first understand the legal context in which the action arose. A method for identifying the owners of severed mineral interests[1] in Minnesota is provided by Minn.Stat. §§ 93.52–.58 (2004). The purpose of the statute

> is to identify and clarify the obscure and divided ownership condition of severed mineral interests in this state. Because the ownership condition of many severed mineral interests is becoming more obscure and further fractionalized with the passage of time, the development of mineral interests in this state is often impaired. Therefore, it is in the public interest and serves a public purpose to identify and clarify these interests.

Minn.Stat. § 93.52, subd. 1.

To accomplish this purpose, the statute provides that beginning January 1, 1970, every owner of a fee-simple interest in minerals that is owned separately from the surface of the property shall file for record in the county recorder office or the registrar of titles office in the county where the mineral interest is located

a verified statement citing sections 93.52 to 93.58 and setting forth the owner's address, interest in the minerals, and both (1) the legal description of the property upon or beneath which the interest exists, and (2) the book and page number or the document number, in the records of the county recorder or registrar of titles, of the instrument by which the mineral interest is created or acquired.[2]

Minn.Stat. § 93.52, subd. 2.

If the owner fails to file the verified statement

> before January 1, 1975, as to any interests owned on or before December 31, 1973, or within one year after acquiring such interests as to interests acquired after December 31, 1973, and not previously filed under section 93.52, the mineral interest shall forfeit to the state after notice and opportunity for hearing as provided in this section.

Minn.Stat. § 93.55, subd. 1.

Respondents commenced an action to determine adverse claims seeking a judgment determining them to be the owners, in undivided fractions, of the severed mineral interests in a 40-acre parcel of land in St. Louis County. The parties agree that as of February 20, 1912, the mineral interests in the land were owned by Henry F. Brown (1/2); Sarah P. Gale (7/36ths); Alfred F. Pillsbury (7/36ths); and John P. Snyder, Sr. (1/9th). Respondents contend that they are the current successors of these owners and base their ownership claims on four chains of title: the Brown chain, the Gale chain, the Pillsbury chain, and the Snyder chain.

---

1. A mineral interest may be severed from, and exist as a fee interest independent of, a surface estate. *Wichelman v. Messner*, 250 Minn. 88, 102–03, 83 N.W.2d 800, 814 (1957).

2. This filing requirement does not apply to any mineral interest owned by the United States of America, the State of Minnesota, or any American Indian tribe or band owning reservation lands in Minnesota. Minn.Stat. § 93.52, subd. 3 (2004).

There has been no break in the Snyder chain since 1912, and there is no dispute with respect to that undivided 1/9th of the severed mineral interests. But there were breaks in the other three chains. Except for one conveyance, the details regarding the breaks in the chains of title will be discussed later. The exception is an unrecorded purported conveyance by the Henry F. Brown Holding Company of its interest to the three other original owners. The district court found that this conveyance occurred before 1938. This conveyance extinguished the Brown chain of title. The three remaining chains have been unbroken since 1966, when the property was leased to a mining company. Since 1966, the Gale chain runs to respondents Alfred P. Gale and Richard G. Ballantine; the Pillsbury chain runs to respondent Bridger Management Company; and the Snyder chain runs to respondent Trustees under the Agreement made January 10, 1968 by Nelle S. Snyder and John P. Snyder, Jr., Susan S. Miller, and Thomas S. Snyder. In 1974, the purported owners under the three remaining chains conveyed one-half of their respective interests to respondent Pillandco, Inc.

In 1969, the legislature enacted Minn. Stat. §§ 93.52–.58, which, as we have already explained, required every owner of severed mineral interests to file a verified statement setting forth the owner's interest in the minerals. 1969 Minn. Laws ch. 829, §§ 1–7. In December 1974, the purported owners of the interests under the Gale, Pillsbury, and Snyder chains filed verified statements setting forth their owner's interest in the severed mineral interests. On December 29, 1975, Pillandco filed a verified statement setting forth its owner's interest in the severed mineral interests.

On December 10, 2004, respondents commenced this action to determine adverse claims naming as defendants all individuals and entities, known or unknown, that appeared of record to claim an interest in the severed mineral interests. Only appellant State of Minnesota interposed an answer. The district court found all other defendants in default, and they are not parties to this appeal. Appellant obtained an order to show cause why the mineral interests should not forfeit to the State of Minnesota, and respondents moved for summary judgment. Appellant and respondents submitted documentary evidence and presented arguments to the district court, and by agreement of the parties that there was no need for any further evidentiary hearing, the case was submitted to the district court on the documents and arguments presented.

The district court concluded that there is clear and convincing evidence that the severed mineral interests are held in fee simple by Bridger Management Company (7/36), Alfred P. Gale (77/432), Richard G. Ballantine (7/432), Nelle Snyder Trustees (1/9), and Pillandco, Inc. (1/2). The district court also found that the verified severed-mineral-interest statements filed in December 1974 regarding the interests under the Gale, Pillsbury, and Snyder chains and by Pillandco in 1975 met the content requirements and the timing requirements of the statute and that no verified severed-mineral-interest statement needed to be filed by later owners to protect the interests from forfeiture. The district court issued its findings of fact, conclusions of law, judgment and order, and judgment was entered. There was no motion for a new trial. This appeal followed.

### ISSUES

1. Does an owner of a severed mineral interest who acquired the interest from a previous owner who filed a verified statement required by Minn.Stat. § 93.52, subd.

2 (2004), need to file a verified statement within one year after acquiring the interest to avoid forfeiture of the interest under Minn.Stat. § 93.55, subd. 1 (2004)?

2. Does a verified statement of a severed mineral interest that is filed by an owner that acquired the interest after it was created and that sets forth the book and page number or the document number of the instrument by which the interest was created and does not set forth the book and page number or the document number of the instrument by which the interest was acquired satisfy the requirements of Minn.Stat. § 93.52, subd. 2?

3. Is there clear and convincing evidence that when the verified statements setting forth the ownership of the mineral interests claimed under the Gale chain, the Pillsbury chain, and the Snyder chain were filed, the parties that filed the statements were the owners of the severed mineral interests identified in the statements?

## ANALYSIS

On appeal from a judgment where there has been no motion for a new trial, appellate review is limited to "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). But a motion for a new trial is not a prerequisite for appellate review of a substantive question of law that was previously considered and addressed by the district court. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn. 2003). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted). An appellate court views the record in the light most favorable to the district court's judgment. *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn.1999). "The decision of a district court should not be reversed merely because the appellate court views the evidence differently. Rather, the findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (citation and quotation omitted).

"Statutory construction is a question of law subject to de novo review." *Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 679 (Minn.2004). The object of statutory construction is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (2004). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* "If the statute is free from all ambiguity, we look only to its plain language." *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn.1997).

### I.

■ After the verified severed-mineral-interest statements setting forth the owner's interests under the Pillsbury and Gale chains were filed in December 1974, the interest under the Pillsbury chain was conveyed to respondent Bridger Management Company and the interest under the Gale chain was conveyed to respondents Alfred P. Gale and Richard G. Ballantine. None of these respondents filed a verified severed-mineral-interest statement.

Under Minn.Stat. § 93.52, subd. 2 (2004),

*every* owner of a [severed mineral interest] shall file for record ... a verified statement citing sections 93.52 to 93.58 and setting forth the owner's address, interest in the minerals, and both (1) the legal description of the property upon or beneath which the interest exists, and (2) the book and page number or the document number ... of the instrument by which the mineral interest is created or *acquired.*

(Emphasis added.) Citing the emphasized language, appellant argues that every owner of a severed mineral interest is required to file a statement and that there is no exception for grantees who acquire their interest from a grantor who had previously filed a required statement. Appellant contends that the district court erred in concluding that because the previous owners of the severed mineral interests had filed statements, respondents did not need to file statements to avoid forfeiture.

We agree with appellant that under the plain language of Minn.Stat. § 93.52, subd. 2, every owner of a severed mineral interest is required to file a verified statement. But Minn.Stat. § 93.52, subd. 2, does not describe the circumstances when a failure to file a verified statement results in forfeiture of a severed mineral interest. Minn. Stat. § 93.55, subd. 1 (2004), describes the circumstances when a failure to file results in forfeiture. Minn.Stat. § 93.55, subd. 1, states:

If the owner of a mineral interest fails to file the verified statement required by section 93.52 before January 1, 1975, as to any interests owned on or before December 31, 1973, or within one year after acquiring such interests as to interests acquired after December 31, 1973, *and not previously filed under section 93.52,* the mineral interest shall forfeit to the state after notice and op-

portunity for hearing as provided in this section.

(Emphasis added.)

The legislature has directed that "[p]rovisos shall be construed to limit rather than to extend the operation of the clauses to which they refer." Minn.Stat. § 645.19 (2004). Therefore, the operation of the clause in Minn.Stat. § 93.55, subd. 1, that states that if the owner of a mineral interest acquired after December 31, 1973, fails to file a verified statement required by section 93.52 within one year after acquiring the interest, the mineral interest shall forfeit to the state after notice and hearing, is limited by the proviso that the interest was not previously filed under section 93.52. With this limitation, the interest does not forfeit to the state if the interest was previously filed under section 93.52.

Appellant contends that the phrase, "and not previously filed under section 93.52," created an exception from the filing requirement only for an owner of a severed mineral interest who acquired the interest on or before December 31, 1973, and filed the required verified statement under the statute in effect before Minn. Stat. §§ 93.52 and 93.55 were amended by 1973 Minn. Laws ch. 650, art. 20, §§ 5 and 6. Appellant argues that the proviso was only intended to allow owners who had filed before the statute was amended to avoid having to file again when the statute was amended and the filing requirements were changed. But in the sentence where it appears, the proviso follows two clauses, one that refers to owners who acquired their mineral interests on or before December 31, 1973, and one that refers to owners who acquired their interests after December 31, 1973. There is nothing in the sentence that provides a basis for concluding that the proviso refers to the first of the two clauses but does not refer to the

second clause, which appears immediately before the proviso. When nothing in the sentence suggests that the proviso refers to only the first clause in the sentence, it is unreasonable to conclude that the proviso does not also refer to the second clause. *See* Minn.Stat. § 645.17(1) (2004) (in ascertaining intention of the legislature, courts presume that legislature does not intend a result that is unreasonable).

■ Minn.Stat. § 93.55, subd. 1, describes a one-year period during which an owner who acquired a severed mineral interest after December 31, 1973, is required to file a verified statement in order to avoid forfeiture of the interest to the state. Obviously, if the owner files a verified statement during this period, the filing requirement is met, and there is no reason for the owner to file another verified statement within the one-year period. It is also obvious that because the filing requirement does not apply until ownership begins, the owner could not have filed a verified statement required by section 93.52 before the one-year period started. Therefore, the reference in Minn.Stat. § 93.55, subd. 1, to a verified statement "previously filed under section 93.52" necessarily refers to a verified statement filed by a previous owner. Consequently, we conclude that if a previous owner of a severed mineral interest has filed a verified statement required by section 93.52, an owner who acquires the interest after December 31, 1973, is not required to file a verified statement within one year after acquiring the interest to avoid forfeiture of the interest to the state.

Because previous owners of the severed mineral interests that respondents Bridger Management Company, Alfred P. Gale, and Richard G. Ballantine acquired after December 31, 1973, had filed verified statements required by section 93.52, respondents did not need to file verified statements within one year after acquiring the interests to avoid forfeiture to the state.[3]

## II.

■ Appellant argues that the severed mineral interests of respondents Bridger Management Company, Alfred P. Gale, and Richard G. Ballantine could not be shielded from forfeiture by the verified statements filed by the previous owners because those verified statements did not comply with the content requirements of Minn.Stat. § 93.52, subd. 2, and the timeliness requirements of Minn.Stat. § 93.55, subd. 1. Appellant contends that at the time the previous owners filed their verified statements, they were simply claimants to the interests who referred to an instrument that created the severed mineral interests, and they were not able to refer to an instrument by which they acquired their claimed interests.

Minn.Stat. § 93.52, subd. 2, requires that a verified statement set forth "the book and page number or the document number ... of the instrument by which the mineral interest is created or acquired." Appellant appears to interpret this requirement to mean that if the owner who files the verified statement acquired

**3.** Appellant argues that under this interpretation of Minn.Stat. § 93.55, subd. 1, no devisee who acquires a severed mineral interest from an ancestor who acquired the interest before December 31, 1973, and filed a verified statement required by section 93.52 would need to file a verified statement. But the filing requirement under section 93.52, subd. 2, applies to every owner of a severed mineral interest regardless of whether a previous owner has filed a verified statement. This interpretation of Minn.Stat. § 93.55, subd. 1, only limits the forfeiture of a severed mineral interest to the state for failing to file a verified statement required by section 93.52.

the mineral interest after it was created, the verified statement must identify the instrument by which the mineral interest was acquired. But the plain language of the statute requires that a verified statement set forth "the instrument by which the mineral interest is created *or* acquired." The verified statements filed by the previous owners of the severed mineral interests that respondents Bridger Management Company, Alfred P. Gale, and Richard G. Ballantine acquired after December 31, 1973, set forth document number 578403 and indicate that the document appears at book 677, page 680. The abstract in the record indicates that the document that appears at book 677, page 680, is a warranty deed dated November 1, 1938, and filed December 10, 1938, which transfers 40 acres to Clark Fisk Corey Agency, Incorporated, a Minnesota corporation, "[r]eserving and excepting all minerals, with the right to mine and remove the same." The grantors named in the deed are Alfred F. Pillsbury and Eleanor F. Pillsbury, his wife; Sarah P. Gale and Edward C. Gale, her husband; and John P. Snyder and Nelle S. Snyder, his wife. By reserving and excepting all minerals, this instrument created the mineral interests that Bridger Management Company, Alfred P. Gale, and Richard G. Ballantine purportedly acquired after December 31, 1973, and setting forth this instrument in the verified statement satisfies the requirement in Minn.Stat. § 93.52, subd. 2.

### III.

■ Appellant argues that even if the verified statements setting forth the ownership of the mineral interests claimed under the Gale chain, the Pillsbury chain, and the Snyder chain met the content and timing requirements of Minn.Stat. §§ 93.52, subd. 2, .55, subd. 1, the district court erred in concluding that when the verified statements were filed, the parties

that filed the statements were the owners of the severed mineral interests identified in the statements. Therefore, appellant contends, because Minn.Stat. § 93.52, subd. 2, requires the owner of a severed mineral interest to file a verified statement, the verified statements did not comply with the statute, and the mineral interests should forfeit to the state.

The district court's findings demonstrate that the court began its analysis of the ownership of the mineral interests in the 40–acre parcel by recognizing that in 1912, the mineral interests were owned by Henry F. Brown (1/2); Sarah P. Gale (7/36ths); Alfred F. Pillsbury (7/36ths); and John P. Snyder, Sr. (1/9th). The abstract in the record indicates that the mineral interests were severed in 1938 when a warranty deed dated November 1, 1938, and filed December 10, 1938, transferred the 40 acres to Clark Fisk Corey Agency, Incorporated, a Minnesota corporation, "[r]eserving and excepting all minerals, with the right to mine and remove the same." But the grantors named in the warranty deed are Alfred F. Pillsbury and Eleanor F. Pillsbury, his wife; Sarah P. Gale and Edward C. Gale, her husband; and John P. Snyder and Nelle S. Snyder, his wife. Henry F. Brown was not a grantor, which means that the deed does not account for the one-half undivided interest in the minerals that Brown owned in 1912, and there is a gap in the chain of title. To account for this gap, the district court considered documents from both before and after 1938.

The district court found that Brown's one-half interest had been transferred to the other three owners of interests in the property before the mineral interests were severed in 1938. This finding was based on a warranty deed dated October 29, 1938, and filed January 5, 1939, which granted the State of Minnesota an ease-

ment over a portion of the property for highway purposes. The grantors named in this deed were the same as the grantors in the November 1, 1938 deed that severed the mineral interests; Brown was not a grantor. The district court found that the fact that Brown was left out of the deed that granted the easement suggested that Brown's interest in the property had been transferred to the other three owners, at least with respect to surface rights.

Appellant argues that this evidence is insufficient to prove that Brown's one-half interest in the mineral interests in the 40 acres was transferred to the other three owners before the mineral interests were severed in 1938. Appellant contends that the fact that Brown was left out of the 1938 deed that granted the highway easement does not support an inference that Brown's mineral interests had been transferred to the other three owners because that deed involved only surface rights. Citing abstract entry number 31, appellant argues that in 1938, Brown could not have conveyed any interest in the surface because the undisputed evidence is that Brown only owned a one-half interest in the minerals in the 40 acres. But entry 31 is for a 1907 quit-claim deed that grants Brown an undivided 9/18ths interest in the 40 acres and grants the remaining undivided 9/18ths interest to other grantees. The entry does not indicate that the deed grants Brown only mineral interests.[4]

Furthermore, the district court's finding that Brown's one-half interest had been transferred to the other three owners was not based only on the 1938 deed that

granted the highway easement. The district court also found that a 1966 mining lease that leased the mineral rights in the 40 acres and in adjoining properties to Syracuse Mining Company stated that all of the mineral interests in the 40 acres were owned by claimants under the Pillsbury, Gale, and Snyder chains in fractional shares that were consistent with the shares that they would own if Brown's one-half interest had been transferred to them. Also, the district court found that the lease indicated that some of the mineral rights in the adjoining lands that were leased to Syracuse Mining Company were owned by the Henry F. Brown Holding Company,[5] which meant that the Henry F. Brown Holding Company participated in the overall leasing arrangement and did not claim an interest in the mineral rights in the 40 acres.

It is apparent that based on the fact that the Henry F. Brown Holding Company participated in the overall leasing arrangement and did not claim an interest in the mineral rights in the 40 acres, the district court inferred that Brown's interest in the 40 acres had been conveyed to someone else. And it is also apparent that based on the fact that the fractional shares attributed to the Pillsbury, Gale, and Snyder chains in the lease were consistent with the shares that they would own if Brown's one-half interest in the 40 acres had been transferred to the other three owners before the mineral interests were severed in 1938, the district court inferred that Brown's interest had been conveyed to the other three owners. These are inferences

4. Abstract entry 33 is for a quit-claim deed in which the grantees under the quit-claim deed described in entry 31, other than Brown, grant Brown an undivided one-half interest in the mineral rights in the 40 acres.

5. The abstract in the record includes entries indicating that by 1917, Henry F. Brown had

died. Probate records indicate that Brown owned the one-half interest when he died. The abstract indicates that in 1925, Brown's heirs conveyed the one-half interest to Henry F. Brown Holding Company, a Minnesota corporation.

that the district court was free to make, if the evidence supports the underlying findings of fact.

■ But there is a problem with the district court's underlying finding of fact that the fractional shares attributed to the Pillsbury, Gale, and Snyder chains in the lease were consistent with the shares that they would own if Brown's one-half interest in the 40 acres had been transferred to the other three owners. The district court's findings indicate that the fractional shares attributed to the Pillsbury, Gale, and Snyder chains in the 1966 mining lease were based on legal advice that Syracuse Mining Company presumably received before entering into the lease. The record contains documents that appear to have been created around 1966 that state the fractional shares attributed to the Pillsbury, Gale, and Snyder chains in the 1966 mining lease. The documents also identify the owners of the fractional shares in 1966. However, the documents only state conclusions about the fractional shares and their ownership in 1966; they do not explain the evidentiary bases for reaching the conclusions. The documents do not identify any events that occurred between 1938 and 1966 that would place ownership of the fractional mineral interests in the owners identified in the 1966 mining lease and, therefore, would support the district court's inference that Brown's interest in the minerals was transferred to the other three owners.

> In order to support a particular verdict, circumstantial evidence need not be such that it must exclude every other theory, but the theory embraced by the verdict must outweigh any conflicting inferences. Where the evidence, viewed cumulatively, could sustain with equal justification either of two inconsistent inferences, the proponent of the theory has failed to meet its burden of proof.

*Republic Nat'l Life Ins. Co. v. Marquette Bank & Trust Co.*, 312 Minn. 162, 168, 251 N.W.2d 120, 124 (1977) (citations omitted). The 1966 lease and the documents created around 1966 are circumstantial evidence of ownership of the mineral interests identified in the lease. They support the inference that the owners identified in the lease owned the mineral interests in 1966. But the record also contains the title documents for the mineral interests that have been recorded in St. Louis County, and this evidence supports the inference that after the mineral interests were severed in 1938, they were not transferred to new owners.

It is not apparent why, after viewing all of the evidence, the district court determined that the inference supported by the 1966 lease and the other documents created around 1966 outweighed the inference supported by the recorded title documents. The district court found that no other parties asserted any rights to ownership of the mineral interests and appears to have inferred from this fact that the owners identified in the lease owned the mineral interests. But the fact that no other parties asserted ownership rights is also consistent with the inference that the mineral interests were not transferred after 1938 because if the interests were not transferred, no other party would have a basis for claiming ownership.

Because we cannot discern from our reading of the district court's findings of fact how the district court determined that the owners identified in the 1966 lease had acquired the fractional interests attributed to them in the lease, we remand to the district court to permit it to make specific findings regarding the ownership of the mineral interests in the 40 acres between 1938 and 1966. The district court may open the record to receive evidence and may amend its conclusions of law and

judgment in accordance with any findings it makes.

## DECISION

The district court did not err when it concluded that the verified statements filed with respect to severed mineral interests in the 40 acres met the content and timeliness requirements of Minn.Stat. §§ 93.52, subd. 2, .55, subd. 1. Also, the district court did not err when it concluded that because previous owners of the severed mineral interests that respondents Bridger Management Company, Alfred P. Gale, and Richard G. Ballantine acquired after December 31, 1973, had filed verified statements required by section 93.52, those respondents did not need to file verified statements within one year after acquiring the interests to avoid forfeiture to the state. Because we cannot discern the basis for the district court's finding that the owners of the fractional mineral interests identified in the 1966 lease had acquired the fractional interests attributed to them in the lease, we remand that issue.

**Affirmed in part and remanded in part.**